694 P.2d 237

**STATE of Arizona, Appellee,**

v.

**Norma Raquel Samper
DE NISTOR, Appellant.**

**No. 6089.**

Supreme Court of Arizona,
In Banc.

Jan. 15, 1985.

Robert K. Corbin, Atty. Gen. By William J. Schafer III and David R. Cole, Asst. Attys. Gen., Phoenix, for appellee.

Thomas E. Higgins, Jr., Tucson, for appellant.

CAMERON, Justice.

Defendant, Norma Raquel Samper De Nistor, appeals from her conviction and judgment of guilt for first degree murder, A.R.S. § 13-1105. She was sentenced to life imprisonment without possibility of parole for twenty-five years, A.R.S. § 13-703. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and A.R.S. §§ 13-4031 and 13-4035.

We must decide the following issues:
1. Did the trial judge act improperly in
 a. refusing to abide by the terms of the plea agreement,
 b. allowing defendant to withdraw her plea of nolo contendere to second degree murder, and
 c. allowing defendant to be tried contrary to the double jeopardy clause after the plea had been withdrawn?
2. Was defendant denied her constitutional right of self-representation?
3. Was the admission of certain hearsay statements improper?
4. Was the picture of the victim so gruesome as to be inflammatory and prejudicial?
5. Did the trial court err in refusing to use defendant's requested instruction on temporary insanity?
6. Was the defendant denied effective assistance of counsel?

The facts follow. Defendant, Norma De Nistor, and Tiberiu De Nistor, the victim, were married in 1975. At that time they were living in New York City, and the victim was driving a cab and studying engineering. In 1980, the couple moved to Tucson, Arizona, where Tiberiu began working as an engineer. In November of 1981, defendant returned to New York in order to have cosmetic surgery. She was there on 6 January 1982, when she received a phone call from her husband informing her that he no longer loved her. She returned to Tucson on 7 January. The victim told her that he wanted a divorce and moved his belongings out of the apartment. At 7 P.M. that evening, defendant purchased a .38 caliber handgun. The victim returned to the apartment that night to talk with defendant in order "to get this divorce thing out of the way." On 8 January, at approximately 2 A.M., defendant telephoned a friend in New York and stated "I kill Puilo." At 3:30 A.M., the police arrived at defendant's apartment. She opened the door and, in response to their request to talk to her husband, told them that he was fine. She invited the officers in and, after they saw the victim's body on the floor, she stated that she had killed him. An autopsy revealed that the victim had been shot six times in the head and chest.

On 15 January 1982 defendant was indicted and charged with first degree murder. The defense of insanity was interposed. From her conviction and sentence, defendant appeals.

## THE PLEA WITHDRAWAL

■■ Defendant initially entered a plea of nolo contendere to second degree murder, Rule 17.1(c), Arizona Rules of Criminal Procedure, 17 A.R.S., pursuant to a plea agreement in which she was to receive a sentence of seven years. Prior to the imposition of sentence the trial judge determined that it would not be in the interests of justice to accept a plea of nolo contendere and that the court could not abide by the agreement to limit the sentence to seven years. After a discussion with counsel, defendant withdrew her plea and the case proceeded to trial. Defendant now raises several objections to these events.

### a. Terms of the Plea Agreement

First, defendant argues that allowing participation of decedent's family prejudiced her ability to maintain the plea. Members of the victim's family had requested that they be allowed to present evidence at the sentencing hearing pursu-

ant to A.R.S. § 13–702(F), which allows the "family of the victim" to appear at aggravation and mitigation hearings "to present evidence and express opinions concerning the crime, [and] the defendant * * *." Because the plea was withdrawn prior to sentencing, however, members of the victim's family never had the opportunity to take part in the hearing, although the judge knew of their request. The judge, after considering information in the presentence report, decided to continue with the plea agreement without a ruling concerning whether members of the victim's family would be allowed to present evidence at a sentencing hearing. The court then reviewed doctors' reports, defense counsel's letters, victims' support letters, defendant support letters and a letter written by defendant. The court decided that it could not agree with the sentence. What part the possibility of the participation of the victim's family played, we can only surmise. In any event, the court, pursuant to Rule 17.4, has wide discretion in considering whether to accept or reject a plea agreement and may do so with or without the recommendation of the victim's family. We find no error.

### b. Withdrawal of Plea

 Defendant next argues that the plea was improperly withdrawn. Defendant cites Rule 17.5, Arizona Rules of Criminal Procedure, 17 A.R.S., which states, in pertinent part, that "[t]he court, in its discretion, may allow withdrawal of a plea of guilty or no contest when necessary to correct a manifest injustice." Defendant argues that because she did not demonstrate the requisite "injustice," the court should not have allowed her to withdraw her plea. Defendant, however, has mistakenly relied upon Rule 17.5. The applicable provision in this case is Rule 17.4, which states that:

d. The court shall not be bound by any provision in the plea agreement regarding the sentence or the term and conditions of probation to be imposed, if, after accepting the agreement and reviewing a presentence report, it rejects the provisions as inappropriate.

e. If any agreement or any provision thereof is rejected by the court, it shall give the defendant an opportunity to withdraw his plea, advising him that if he permits his plea to stand, the disposition of the case may be less favorable to him than that contemplated by the agreement.

We have interpreted this language to mean that a court, after accepting a plea, is not bound by the negotiated sentence. If the judge rejects the sentence, he is required to give the defendant the opportunity to withdraw the plea. *Smith v. Superior Court*, 130 Ariz. 210, 212, 635 P.2d 498, 500 (1981). In the instant case the judge acted properly in giving defendant the option to withdraw the plea. We find no error.

 Defendant also maintains that the trial court should have determined that the plea was intelligently and voluntarily withdrawn. Defendant asserts that because the court must make this finding before accepting the plea, *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), it should also do so before allowing a withdrawal. We do not agree. A judge may accept a plea of guilty only under certain conditions and may refuse to accept such plea if it is not knowingly, understandingly, and voluntarily made, or if there is no factual basis for the plea. Rules 17.1, 2, and 3, Arizona Rules of Criminal Procedure, 17 A.R.S. A court may not, however, refuse to accept a plea of not guilty. As to the withdrawal of a plea of guilty, the court is given wide discretion in allowing the defendant to change his mind. In most instances, when the ends of justice indicate that this should be done, as in the case of the refusal of the court to accept the terms of a plea agreement pursuant to Rule 17.4(e), the court must allow the defendant to withdraw his plea.

 Neither is the procedure urged by defendant constitutionally mandated. Under the Due Process Clause, U.S. Const. Amend. XIV, a plea of guilty may not be accepted unless it is voluntarily and knowingly made. In foregoing a right to trial, a

defendant waives several constitutional rights: the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers. *Boykin*, supra, at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279. These rights are so important that care must be taken to assure that defendant is aware of exactly what he has given up. "Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 425 (1969). In withdrawing his plea, however, defendant does not forego any of these constitutional rights. Indeed, the rights that he forfeited when he pled guilty are returned. Thus, the due process concerns are not implicated in the same manner as when the plea is initially entered, and there is no need for the trial judge to make the same finding of voluntariness. We find no error.

### c. Double Jeopardy

■ Defendant next contends that double jeopardy acts as a bar to trial after the plea withdrawal. We do not agree. Once a court accepts a plea of guilty, the accused is put in jeopardy. *Smith*, supra, 130 Ariz. at 212, 635 P.2d at 500. A court may not, therefore, sua· sponte, enter an order vacating the acceptance of the plea of guilty and set the case for trial. *Lombrano v. Superior Court*, 124 Ariz. 525, 526, 606 P.2d 15, 16 (1980). This action would violate the constitutional proscription against a person "twice [being] put in jeopardy [for the same offense]." U.S. Const. amend. V; Ariz. Const. art. 2, § 10. However, "[i]f a defendant, after acceptance of a guilty plea by the court, moves to withdraw his guilty plea, he of course waives the jeopardy defense if his motion to withdraw is granted." *Lombrano*, supra. The court was not bound by the terms of the plea agreement and, in this case, the sentence agreed to by the parties and it so informed defendant. She, then, had the choice *of going* ahead with the sentencing, receiving whatever sentence the court might impose, knowing that it

should be more than the seven years agreed to, or withdrawing the plea of guilty and take her chances with a trial. She chose to do the latter. The plea was withdrawn upon her request and by doing so she waived any double jeopardy defense.

## MOTION FOR
## SELF-REPRESENTATION

■ Defendant next argues that she was denied her constitutional right of self-representation. After the jury had been empaneled and several witnesses had testified, defendant requested that her attorney be discharged and that she be allowed to represent herself. She also requested a continuance in order to prepare her defense. The court refused to postpone the trial, stating that it would allow her to represent herself only if she were prepared to proceed immediately. Defendant now argues that because the court refused her the necessary time to prepare, she was effectively denied the right of self-representation. We do not agree.

■ A defendant has a constitutionally protected right to be represented by counsel or to proceed without counsel if she so chooses. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Ariz. Const. Art. 2, § 24. This right cannot, however, exist in a vacuum. Balanced against it is the government's right to a "fair trial conducted in a judicious, orderly fashion * * *." *United States v. Dujanovic*, 486 F.2d 182, 186 (9th Cir.1973). Although our court has not yet addressed this issue, other courts have developed guidelines for weighing these interests. The defendant's right to waive counsel is subject to a finding that the waiver of counsel was made voluntarily and knowingly, *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), and that the request to proceed was made in a timely fashion. *See, e.g., Fritz v. Spalding*, 682 F.2d 782, 784 (9th Cir.1982). A motion to proceed without counsel is timely if it is made before the jury is empaneled, *id.*, although some courts have indicated that it

must be made somewhat in advance of trial. *See State v. Sheppard,* 310 S.E.2d 173, 189 (W.Va.1983) (the trial judge did not abuse his discretion in denying right of self-representation when request made on morning trial was to begin). If the request is untimely, then whether defendant will be given the opportunity to waive counsel is within the discretion of the trial court. *Id.; Bassett v. Commonwealth,* 222 Va. 844, 858, 284 S.E.2d 844, 853 (Va.1981), cert. denied, 456 U.S. 938, 102 S.Ct. 1996, 72 L.Ed.2d 458 (1982). Factors that the trial court should consider "include the reasons for the defendant's request, the quality of counsel, the defendant's proclivity to substitute counsel, and the disruption and delay expected in the proceedings if the request were to be granted." *People v. Barnes,* 636 P.2d 1323, 1325 (Colo.App. 1981). We agree with this framework for evaluating defendant's requests. It gives the defendant the opportunity to assert the right of self-representation but not at the expense of the orderly administration of the judicial process.

In applying this standard we find that defendant's notice was voluntarily and knowingly made but not timely. The jury had already been empaneled, opening arguments had been made, and testimony had been taken. The trial had been delayed several times to accommodate counsels' schedules, and defendant had requested a change of counsel on several occasions. Additionally, the delay would have inconvenienced witnesses, especially the experts, who had made arrangements to be available to testify. The trial court did not abuse its discretion in refusing to grant a continuance. We find no error.

## EXPERT TESTIMONY

Prior to the testimony of Dr. David Bendheim, defendant filed a motion in limine asking that statements made by the victim to his attorney and others concerning fear of his wife be precluded from use. The court found that these were hearsay and granted the motion. At trial the following occurred:

Q What in particular, Doctor, in the information that you received from Norma Nistor and the documents that you have reviewed in the—the exhibits in the case that you reviewed, do [you] rely on in reaching that opinion?

A Both Ms. Nistor, the defendant, and the victim were fully aware of this probability. She had, many times—many, many times, made that statement, that threat, that rather then seeing him go to some other woman or leaving her, that she'd kill him and possibly kill herself, not once, but on many occasions. The—the deceased was extremely scared at the time before his death. He predicted it, predicted it to his lawyer, he was more scared than any other person that lawyer had ever seen. He, uh—he did not follow his lawyer's advice. The lawyer advised him strongly not to go near his wife. He did anyhow, and the results were tragic. The, uh, defendant, in order to make good on her threat, went to a gun shop, she went there twice because, the first time, she didn't have the necessary papers to prove residency in Arizona. When the, uh, salesman wouldn't sell her a gun, she got these papers, she went back and obtained the gun, purchased it, wrote out a check and paid for it. She, uh, learned how to use the gun, she bought the ammunition, she loaded it, she took proper aim—for her, proper aim—and she did exactly what she had predicted she would do. After that, she made telephone calls telling some of her family members and friends what she had done, and telling police officers that she—what she had done, and that she deserves to die because she had done something very bad.

Defendant now contends that admission of the testimony concerning decedent's prediction of his death constituted prosecutorial misconduct and reversible error by the court.

We note first that no objection was made to this testimony at the time of trial. Defendant therefore waived her right to assert this matter on appeal.

*State v. Miller,* 112 Ariz. 95, 98, 537 P.2d 965, 968 (1975). We will review the question only if the admission of the testimony constituted fundamental error. *State v. Viertel,* 130 Ariz. 364, 366, 636 P.2d 142, 144 (App.1981). We have described fundamental error as error "going to the foundation of the case or that which takes from defendant a right essential to his defense, * * *, and as error of such magnitude that the defendant could not possibly have had a fair trial." *State v. Libberton,* 141 Ariz. 132, 685 P.2d 1284, 1290 (1984) (citation omitted). Assuming *arguendo* that the statement was improperly admitted, the error did not rise to this level.

Neither was it prejudicial. By the time Dr. Bendheim was called to testify, the jury had already heard evidence that the victim was very nervous prior to his death and was concerned that his wife might react badly to his request for a divorce. It had also heard several witnesses state that at various times defendant had said that if her husband ever left her she would kill him. The psychiatrist's statement was not substantially different from this other properly admitted evidence. We find no error.

### THE PHOTOGRAPH

Defendant filed a motion in limine to preclude the use of photograph #40 taken at decedent's house of the victim's face. The trial court overruled the request. Defendant now argues that the court's ruling constitutes reversible error.

 Gruesome photographs may not be admitted unless their probative value outweighs their prejudicial impact on the jury. *State v. Summerlin,* 138 Ariz. 426, 433, 675 P.2d 686, 693 (1983). While we find little or no probative value in the admission of the photographs, neither do we find the photographs particularly gruesome such that they would unduly excite or inflame the passions of the jury. We find no error.

### ERRONEOUS JURY INSTRUCTION

Next, defendant argues that the trial judge erred in refusing to give the following proposed instruction:

Temporary legal insanity, or legal insanity of short duration, which existed at the time of the commission of the offense charged, is as fully recognized as a defense of legal insanity of longer duration.

The trial court instead gave the following charge:

An individual is insane legally if at the time of the commission of the act she was suffering from such a mental disease or defect as, number one, to not know the nature or quality of her act.

Or number two, if she did know, that she did not know that what she was doing was wrong.

Where insanity is the issue the burden is on the State to prove beyond a reasonable doubt, number one, that the defendant knew the nature and quality of her act.

And number two, that she knew what she was doing was wrong.

Defendant argues that she had introduced evidence sufficient to establish temporary insanity and was therefore entitled to her requested charge.

 In settling jury instructions, the court is not required to give a specific instruction if it is substantially covered by other instructions. *State v. Printz,* 125 Ariz. 300, 304–05, 609 P.2d 570, 574–75 (1980). In the instant case, the court's instructions adequately covered the theories embodied in defendant's requests. The court told the jury that all it need find was that defendant was insane *at the time she committed the act.* This encompassed the possibility that defendant was insane only for those few moments surrounding the commission of the crime, *i.e.,* that her defect was only temporary. We find that defendant's requested instruction was substantially covered by the instructions given. We find no error.

## INEFFECTIVE ASSISTANCE
## OF COUNSEL

Finally, defendant contends that she was denied effective assistance of counsel. She bases this argument on two points. First, she argues that her attorney refused to turn over to her records of the case, thus preventing her from assisting in the preparation of her case or being able to represent herself. Second, she alleges that she was denied the right to testify on her own behalf, thus depriving the jury of the opportunity to hear her speak so that it might better form an opinion about her mental condition.

### a. Records

■ The factual basis of her first claim is not supported by the record. Although defendant did write a letter to the trial judge complaining generally about her attorney, she did not indicate that she was not receiving any files or documents. Furthermore, upon receipt of the letter, the judge ordered that copies of police reports and medical reports be made available to defendant. There is no allegation that she did not receive these reports, and there is no showing that she did not have access to the relevant information.

### b. Right to Testify

■ We have recently adopted the rule in *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) concerning effective assistance of counsel. We stated:

> In that case [Strickland], the United States Supreme Court set out a two-pronged test for determining counsel's effectiveness. First, the defendant must show that counsel's performance was deficient. According to the Court deficient performance is performance falling "below an objective standard of reasonableness. * * * The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Second, the defendant must show that counsel's deficient performance prejudiced the defense. This Court

adopted the second prong of *Strickland* in *Lee*.

*State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227 (citations omitted.)

This court is reluctant to second guess actions taken by trial counsel that go to trial strategy. "We have always held that disagreements as to trial strategy * * * will not support an ineffectiveness claim, as long as the challenged conduct could have some reasoned basis." *State v. Watson*, 134 Ariz. 1, 4, 653 P.2d 351, 354 (1982). We recognize that, normally, whether the defendant should testify is a decision that defendant should make. ABA Standards for Criminal Justice, § 4–5.2 (2d ed. 1980). Defendant does not claim, however, that she wanted to testify and was prevented from doing so. It appears instead that she and her attorney agreed on this strategy of silence which she now claims was in error. We do not find that this choice was below objective standards of reasonableness. *Nash*, supra. Defense counsel may have felt, as we suspect was the case, that Mrs. De Nistor would have harmed rather than helped her own defense by testifying. Defendant's counsel's performance was reasonable under prevailing professional norms. *Strickland*, supra. We find no error.

We have searched the record for fundamental error pursuant to A.R.S. § 13–4035, *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), and find none.

The conviction, judgment, and sentence of the defendant are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.