NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

THOMAS GLENN MORGAN, *Appellant.*

No. 1 CA-CR 13-0241
FILED 3-6-2014

Appeal from the Superior Court in Maricopa County
Nos. CR2010-161928-001, CR2008-129836-001
The Honorable Christine E. Mulleneaux, Judge *Pro Tempore*

**CONVICTION AFFIRMED; SENTENCES AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra

*Counsel for Appellee*

Maricopa County Public Denfender's Office, Phoenix
By Jeffrey L. Force

*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Kenton D. Jones joined.

---

**WINTHROP,** Judge:

**¶1** Thomas Glenn Morgan ("Appellant") appeals his conviction and sentence for one count of theft in Maricopa County Superior Court Cause No. CR2010-161928-001 ("the 2010 case"), as well as his sentence in Maricopa County Superior Court Cause No. CR2008-129836-001 ("the 2008 case"). Appellant argues that, in the 2010 case, the trial court (1) abused its discretion by denying his motion to represent himself at trial without holding a *Faretta*[1] hearing; (2) failed to fully credit him for presentence incarceration; and (3) erroneously ordered him to pay for DNA testing. For the reasons set forth below, we affirm Appellant's conviction in the 2010 case, affirm his presentence incarceration credit of 248 days in that case, modify his sentence in that case by vacating the order that he pay for DNA testing, and modify his sentence in the 2008 case to reflect 132 days of presentence incarceration credit.

**FACTS AND PROCEDURAL HISTORY**[2]

**¶2** In October and November 2010, Appellant was employed as a runner by K.O.,[3] a sole practitioner Phoenix attorney. Sometime around Halloween, K.O., who was out of town, instructed Appellant to pick up a check in the amount of $1330 from an individual in Chandler, Arizona, and deliver it to a client in Phoenix. The check represented the third and final payment in a collection case K.O. had resolved on the client's behalf, and was to be made out directly to the client. Instead, Appellant

---

[1] *See Faretta v. California*, 422 U.S. 806 (1975).

[2] We view the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against Appellant. *See State v. Nihiser*, 191 Ariz. 199, 201, 953 P.2d 1252, 1254 (App. 1997).

[3] We use initials to protect the victim's privacy. *See State v. Maldonado*, 206 Ariz. 339, 341 n.1, ¶ 2, 78 P.3d 1060, 1062 n.1 (App. 2003).

requested that the issuer make the check out to him (as "Thomas Morgan PC"), and he cashed the check that same day.

¶3        Later that day, Appellant telephoned K.O. and said, "Don't worry, everything is going to be all right."   When K.O. asked what he meant, Appellant explained the check had been "lost," but he would have it "reissued," and "[n]obody is going to get in any trouble."   After this cryptic conversation, K.O. never heard from Appellant again.  When K.O. returned to Phoenix, she learned what had happened from the issuer of the check.  She also confirmed her client had never received a check for the final payment and immediately covered the money due him from her own funds.

¶4        The State charged Appellant with one count of theft of a value of $1000 or more but less than $2000, a class 6 felony.  A trial *in absentia* was held, and the jury found Appellant guilty as charged.  At sentencing on March 27, 2013, Appellant stipulated he had six prior felony convictions.  The trial court sentenced Appellant to the presumptive term of 3.75 years' incarceration in the Arizona Department of Corrections ("ADOC"), with credit for 248 days of presentence incarceration. Immediately after sentencing Appellant in the 2010 case, the trial court found Appellant in automatic violation of the conditions of his probation in the 2008 case, revoked his probation, and sentenced him to a consecutive, presumptive term of 2.5 years' incarceration in ADOC, with no credit for presentence incarceration.

¶5        We have jurisdiction over Appellant's timely appeal pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (West 2014),[4] 13-4031, and 13-4033.

**ANALYSIS**

I.        *Denial of Motion to Represent Self*

¶6        On June 12, 2012, a few minutes before trial began and before the court reporter had set up, Appellant made oral motions to represent himself and continue the trial date.  The only direct record provided on appeal as to what transpired is contained in the trial court's June 12 minute entry, which states in pertinent part:

---

[4]        We cite the current version of the applicable statutes unless changes material to our decision have since occurred.

> Argument is heard on [Appell]ant's oral Motion to Represent Self and Motion to Continue Trial Date. [Appell]ant was instructed on 5/17/2012 by Judge Flores to put such motions in writing, which [Appell]ant failed to do.

> IT IS ORDERED denying [Appell]ant's Motion to Represent Self and Motion to Continue Trial Date.

According to the minute entry, Appellant informed the court he was dissatisfied and intended to leave. The court warned Appellant the trial would proceed *in absentia* should he choose to leave, and his absence would be considered voluntary. The court then took a brief recess, and Appellant left the courtroom.

¶7        When the trial court reconvened with the court reporter present a few minutes later, Appellant was absent. Defense counsel advised the court that, during the recess, Appellant had called to see if the State might still offer him a plea deal, but when the prosecutor declined to reinstate the previous plea offer, Appellant declared he was "going to the hospital." The court also memorialized what had transpired earlier, stating for the record that Appellant had made "an oral motion to the Court to represent himself, which the Court denied."

¶8        On appeal, Appellant argues the trial court abused its discretion by failing to conduct a *Faretta* hearing on his oral motion to represent himself at trial. Having reviewed the record available, we find no abuse of the trial court's discretion. *See State v. McLemore*, 230 Ariz. 571, 575, ¶ 15, 288 P.3d 775, 779 (App. 2012) (stating that this court reviews for an abuse of discretion the trial court's finding that a defendant has waived his right to counsel and the court's decision denying a defendant the right to proceed *pro se*).

¶9        It is well established that a defendant has a constitutional right to be represented by counsel at trial or to represent himself if he so chooses. *State v. De Nistor*, 143 Ariz. 407, 412, 694 P.2d 237, 242 (1985) (citing *Faretta*, 422 U.S. at 806; Ariz. Const. art. 2, § 24). A defendant's right to waive counsel is subject to a finding that the waiver was voluntarily and knowingly made and the request was made in a timely fashion. *Id.* Normally, a motion to proceed without counsel is timely if it is made before the jury is empanelled, although some courts have indicated the motion must be made somewhat in advance of trial. *Id.* at 412-13, 694 P.2d at 242-43 (citing *State v. Sheppard*, 310 S.E.2d 173, 189 (W. Va. 1983) (finding no abuse of discretion in denying a request to exercise

the right of self-representation made on the morning trial was to begin)). Furthermore, although a defendant's competence to waive the constitutional right to counsel is the primary concern when restricting the free exercise of self-representation, under certain circumstances, concerns about trial delay and disruption may allow a trial court to limit the assertion and exercise of the right. *McLemore*, 230 Ariz. at 576, ¶ 17, 288 P.3d at 780.

¶10 As the party seeking relief, the appellant bears the duty to prepare the record in such a manner as to allow this court to decide the questions raised on appeal. *State v. Mendoza*, 181 Ariz. 472, 474, 891 P.2d 939, 941 (App. 1995). If no report of the evidence or proceedings at trial was made, an appellant may prepare a statement of the evidence from the best means available, including the appellant's recollection, and file it with the trial court. Ariz. R. Crim. P. 31.8(f). We will not speculate about matters not in the appellate record; instead, we presume that any missing portions of the record support the action of the trial court. *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982). We will affirm the trial court's ruling if it is legally correct for any reason. *State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984).

¶11 Appellant does not present us with any record of the discussion of his oral motion other than the minute entry and the trial court's summary as cited above. He did not ask to make a record of the pretrial discussion before the prospective jury panel was called and trial began that afternoon, and did not attempt to provide us with his recollection of that discussion as provided by the rules. We therefore presume that what transpired during that discussion supports the trial court's decision to deny his motion. *See id.*

¶12 Moreover, the portions of the record we have support an inference that the trial court denied the motion because it believed Appellant's request was made simply in an effort to delay the trial. The record shows Appellant had requested no fewer than eight previous continuances, two of them due to his failure to appear on the previously scheduled first day of trial.

¶13 Initially, trial had been set for May 21, 2012. On May 17, Appellant made an oral motion to change counsel, arguing that he wished to hire private counsel experienced in cases involving mental health issues. The court informed Appellant that he needed to submit a written motion for substitution of counsel and determine if the attorney would be ready to go to trial on May 21 because the court would not agree to a

substitution unless new counsel could "certify to the court that she would be ready for trial on the 21st." Appellant never submitted a written motion to substitute counsel. Instead, on May 21 and May 22, Appellant failed to appear for trial, claiming health issues were responsible.

¶14 A new firm trial date was set for Tuesday, June 12, 2012. On that date, Appellant made his oral motion to represent himself. After the trial court denied his motion, Appellant left and failed to appear for the remaining afternoon proceedings, which included jury voir dire and preliminary instructions.

¶15 The following day, June 13, Appellant was again not present. Defense counsel informed the court he had received a fax, ostensibly from one of Appellant's physicians, indicating Appellant required "further testing and medical care" before he could be released from the hospital. Defense counsel requested a continuance because Appellant had changed his mind and indicated "he would want to testify in this trial." The trial court affirmed Appellant's absence the day before "was voluntary," but stated "[t]oday I'm not so sure," and asked defense counsel to contact Appellant's physician to ascertain how many days Appellant would likely remain hospitalized. After a brief recess, defense counsel reported he had spoken with Appellant, who informed counsel he had "learned from the staff" he would likely remain hospitalized "up to two days." Believing Appellant's health had deteriorated and he was no longer voluntarily absent from trial, the court continued the trial to the afternoon of Monday, June 18. However, the court also asked for documentation concerning Appellant's asserted health and medical issues, and expressed concern that Appellant might be "fishing for different doctors at this point."

¶16 On the morning of June 18, Appellant appeared with counsel. Appellant presented the court with a card stating he was scheduled for a medical procedure on June 22, 2012, and he requested a further continuance of the trial. Noting that "[c]learly the doctor feels that you can stay out on your own until June 22nd," the trial court denied the continuance. Appellant voiced his displeasure with the court's ruling and did not appear when trial reconvened in the afternoon.

¶17 After trial resumed that afternoon, the trial court received faxes, ostensibly from one of Appellant's physicians. One fax stated in part: "The stress of trail [sic] duties would be too much [for Appellant] to bear at this time." During a recess, the court spoke with the physician, who declined to discuss Appellant's medical condition but avowed that no fax had been sent from his office. The physician affirmed the fax

received by the court was "a falsified note," and Appellant had "[t]ried to get our secretaries to fax it from our office." The remainder of the trial proceeded in Appellant's absence.

**¶18** The trial court made several statements on the record indicating the court found Appellant's various requests were aimed at delaying the trial. On June 13, the day after the court denied Appellant's motions to represent himself and continue the trial, the court noted it appeared the absent Appellant had been "dragging his feet on trial" and that when "[h]e was asking for new counsel at the last minute, he was grasping at straws," which is why the court had warned him on June 12 that trial would proceed in his absence if he did not appear. Similarly, on the afternoon of June 18, when Appellant failed to appear after the court denied his request for a continuance that morning based on his medical excuse, the court noted, "[I]t's clear to this Court that he's trying to delay his trial." Given the record before us, we conclude the trial court's denial of Appellant's motion to represent himself on the first day of trial, coupled with his motion to continue, was based on the court's concern regarding the further disruption and delay of the trial that would result if the motion was granted. Under these circumstances, the trial court's denial of the motion was not an abuse of discretion. *See McLemore*, 230 Ariz. at 576-77, ¶ 17, 288 P.3d at 780-81.

## II. *Presentence Incarceration Credit*

**¶19** The trial court credited Appellant for 248 days of presentence incarceration in the 2010 theft case. On appeal, Appellant argues he is owed 132 additional days of credit, and the trial court erred in not apportioning the additional credit to his sentence in the 2010 case. The State concedes Appellant is owed 132 days' credit, but maintains the credit is due him in the 2008 case and that we lack jurisdiction over that case in this appeal.

**¶20** Appellant admits he failed to raise this issue before the trial court and recognizes we are limited to fundamental error review on appeal. *See State v. Henderson,* 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). Generally, however, "[i]mposition of an illegal sentence constitutes fundamental error." *State v. Thues*, 203 Ariz. 339, 340, ¶ 4, 54 P.3d 368, 369 (App. 2002) (citation omitted).

**¶21** A person is entitled to credit for "[a]ll time actually spent in custody *pursuant to an offense* until the prisoner is sentenced to imprisonment *for such offense*." A.R.S. § 13-712(B) (emphasis added). As

Appellant acknowledges, the 132 days of credit was due him "for time previously served on his probation violation" in the 2008 case, a case unrelated to his 2010 theft case. Therefore, the trial court committed no error, let alone fundamental error, by not crediting the 132 days to Appellant's sentence in the 2010 case.

**¶22** Nevertheless, contrary to the State's argument, we have jurisdiction over Appellant's sentencing in the 2008 case because Appellant's own timely notice of appeal references both cause numbers.[5] In accord with this court's authority to correct and reduce an illegal sentence pursuant to A.R.S. § 13-4037(A), we modify the trial court's March 27, 2013 minute entry order in the 2008 case (Maricopa County Superior Court Cause No. CR2008-129836-001) to reflect that Appellant is credited for 132 days of presentence incarceration credit in that case.

### III. Cost of DNA Testing

**¶23** As part of Appellant's sentence for his theft conviction, the trial court ordered Appellant to submit to DNA testing and "pay the applicable fee for the cost of that testing in accordance with A.R.S. § 13-610." Appellant argues that, although the trial court was required by law to order him to submit to DNA testing, "there was no legal basis" for its further order that he pay for that testing. The State concedes that, based on *State v. Reyes*, 232 Ariz. 468, 307 P.3d 35 (App. 2013), the trial court erred in ordering Appellant to pay the cost of DNA testing. We agree.

**¶24** In *Reyes*, we found that "because § 13-610 does not require a convicted defendant to be assessed the cost of his DNA testing," the trial court had no legal basis for doing so under the statute. *Id*. at 472, ¶ 14, 307 P.3d at 39. That reasoning applies in this case as well. Pursuant to A.R.S. § 13-4037(A), we modify Appellant's sentence in the 2010 case (Maricopa County Superior Court Cause No. CR2010-161928-001) by vacating the portion of the sentence requiring Appellant to pay for his DNA testing.

## CONCLUSION

**¶25** For the foregoing reasons, we affirm Appellant's conviction in the 2010 case, affirm his presentence incarceration credit of 248 days in

---

[5] We also note the cases appear to have been consolidated at the trial level and Appellant was sentenced in both cases on the same date in the same hearing. This court has amended the caption in this case to include both the 2010 case and sentencing in the 2008 case.

the 2010 case, modify his sentence in the 2010 case by vacating the order that he pay for DNA testing, and modify the trial court's March 27, 2013 minute entry order in the 2008 case (Maricopa County Superior Court Cause No. CR2008-129836-001) to reflect that Appellant is credited for 132 days of presentence incarceration in that case.



**Ruth A. Willingham · Clerk of the Court**
FILED: mjt