NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

───────────────

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL DUMARK SUEING, *Appellant.*

Nos. 1 CA-CR 21-0363
1 CA-CR 21-0367
(Consolidated)
FILED 12-01-2022

───────────────

Appeal from the Superior Court in Maricopa County
Nos.  CR2021-101881-001
CR2018-120668-001
The Honorable Suzanne E. Cohen, Judge
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

───────────────

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Kyle Kinkead
*Counsel for Appellant*

<hr>

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge D. Steven Williams joined.

<hr>

**H O W E**, Judge:

¶1 Michael Sueing appeals his convictions and sentences in two separately tried cases. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 In 2018, Sueing went out for dinner and a drink with a woman he met at a bus stop. After dinner, Sueing and the woman smoked marijuana behind a nearby dumpster. At the end of their outing, Sueing insisted on walking the woman home "at least halfway." On their walk, Sueing grabbed the woman, forced his hand down her pants and up her shirt but stopped when she told him, "No." At home, the woman found Sueing's marijuana in her pocket and contacted him to give it back. That same night Sueing came to the woman's apartment to pick up his marijuana and used her restroom. Sueing grabbed the woman, choked, hit, and raped her, and made her perform nonconsensual sexual acts on him. The woman pleaded with him to leave, and he eventually did. The woman called the police.

¶3 The State charged Sueing with three counts of sexual assault, one count of aggravated assault, and one count of threatening or intimidating ("the 2018 case"). Sueing decided to represent himself after several different attorneys had represented him. After the trial started, but before a jury was empaneled, Sueing said that he wanted his advisory attorney to take over. The trial court gave counsel time to prepare and advised Sueing that he would not be allowed to "flip-flop back" to self-representation.

¶4 Before the trial recommenced, Sueing's attorney asked to withdraw because of a conflict with Sueing over the defense and Sueing's statements that caused the attorney to fear for his safety sitting beside Sueing at trial. The court allowed counsel to withdraw and denied Sueing's request to represent himself again. The case was transferred to a different judge for trial. Not long before trial, Sueing's new attorney moved to

withdraw because Sueing had threatened him. The court broached the possibility of shifting the attorney to an advisory capacity and allowing Sueing to represent himself, but Sueing chose to proceed to trial with representation. The court informed him that if he was disruptive at trial, he would forfeit his right to be present in the courtroom.

¶5 Several days into the trial, as jurors entered the courtroom and took their seats, Sueing physically assaulted his attorney. Law enforcement personnel subdued Sueing, and the court declared a mistrial. The court permitted defense counsel to withdraw and ruled that Sueing had forfeited his "right to be present in the courtroom for any future trial in this matter." The court found that Sueing had "demonstrated that he w[ould] act on a threat," was "a danger to anyone and everyone else in the courtroom as demonstrated by his actions," and could not "be trusted to not act out again." It also found that he had "gone through five (5) attorneys in this current case and ha[d] demonstrated an inability to work with any of them." The court further found that Sueing "was previously granted pro per status but asked to withdraw that status with a warning that he would not be allowed to represent himself in the future" and might "very well act out again" if his "new attorney proceed[ed] to trial with [Sueing] present." The court left it to the next trial judge to determine how Sueing might view any future trial in the case.

¶6 Based on Sueing's conduct in court, the State charged him with aggravated assault and interfering with judicial proceedings ("the 2021 case"). Before either case was transferred to a new trial judge, Sueing asked to represent himself and be present in the courtroom at both trials. He asserted that because his misconduct related to disagreements with his previous attorney—who no longer represented him—his presence in the courtroom was not a concern. The court denied both requests, relying on the court's findings and the previous court's own experience with Sueing. The court found that Sueing posed risks to the safety of himself and others. It also found that it could not trust his assurances given that Sueing could not control, and the court could not predict, when he would erupt. The court also reasoned that although Sueing could be present in the courtroom if adequately restrained, the restraints needed would be obvious, which could tarnish the jury's view of him. Sueing also posed an additional risk of acting out to deliberately cause a mistrial. The court further observed that Sueing had been warned that he would not be allowed to reclaim the right to self-representation after forfeiting it and that allowing him to represent himself would threaten the safety of those interacting with him as well as an orderly trial process.

¶7        The court allowed Sueing to participate virtually in the pretrial proceedings for the 2018 and 2021 cases. He repeatedly declined to do so. A different judge presided over the retrial of the 2018 case—which began about three months after the mistrial. The court informed Sueing that he would not be allowed in the courtroom but could watch the proceedings from a tablet in a holding area adjoining the courtroom. Sueing refused transport for jury selection on the first day of trial. He was transported on the second day but was dissatisfied with his viewing arrangement. Sueing banged on the door of the holding area and told an officer that he would continue to do so because he could not see the jury over the video feed. The courtroom heard the banging. The court found "that the banging [was] absolutely disruptive," Sueing had "shown over and over again that he [could not] comport himself in a manner appropriate for these proceedings," and that he had forfeited the right to observe the proceedings virtually. The court ordered Sueing returned to jail and brought back to the courthouse only if and when he testified. When a deputy told Sueing that he was being removed, the court heard him banging again. Later that day, defense counsel asked if Sueing could watch the proceedings from a tablet at the jail. The court told counsel that it had inquired about that possibility and was informed that no resources existed to accommodate it.

¶8        On the fourth day of trial, defense counsel told the court that Sueing asked for another opportunity to watch the trial from a tablet in the courthouse and "that he promise[d] no more disturbances." The court denied the request because Sueing's "avowal [was not] enough for this court to risk bringing him back" given his prior conduct, which had disturbed not only that courtroom but another one as well.

¶9        Sueing elected to testify and was brought to the courthouse on the sixth day of trial. The court allowed him to watch the proceedings from a tablet in the holding area before he testified, informing him that because it was a live feed accessible to the public, he would be unable to see the jury. The court warned Sueing that his disruptive conduct would lead to another expulsion.

¶10        During his testimony, Sueing was often argumentative and unresponsive. He disobeyed the court's admonitions to comply with trial rules and made impromptu remarks that counsel was not eliciting information that jurors should know. After he was examined and the court excused the jury for the evening recess, Sueing continued to speak in defiance of the court's directives and warnings, complaining that the court and counsel were keeping important evidence from the jury and calling out to jurors directly what he believed that evidence to be. The court had Sueing

removed, and the defense rested its case. He was not brought back to the courthouse.

¶11          The trial court instructed the jury that Sueing's absence was "not evidence" and that they "must not consider it" in deciding whether the State proved the charges beyond a reasonable doubt. The jury found Sueing not guilty of one count of sexual assault but guilty of the other four charges.

¶12          The 2021 case went to trial about two months after trial in the 2018 case, with the same judge presiding. Before trial, Sueing's attorney moved to reconsider Sueing's exclusion from the courtroom, arguing that jurors would infer that he was absent because "the Court ha[d] already convicted him of disrupting the courtroom" and likely to be "dangerous because he assault[ed] courtroom participants." The court summarily denied the motion. Sueing was not transported to court for jury selection on the first day of trial. When defense counsel asked about his ability to view the proceedings from outside the courtroom, the court stated that he "lost that right when he proceeded to bang on the wall and yell and scream" during the previous trial and no means existed for him to watch the proceedings from the jail.

¶13          Sueing was transported to court the next day with the expectation that he would testify, but he was not allowed to observe the proceedings. The attorney that Sueing attacked and the officer who observed the attack testified. After the State rested its case, defense counsel again moved to reconsider Sueing's presence. The court denied the motion, "reiterat[ing] its previous findings" that "Mr. Sueing's actions and Mr. Sueing's actions alone . . . have resulted in his ability to not control himself in a court proceeding, and therefore not be present in any court proceedings, other than if he should choose to testify."

¶14          When Sueing was brought into the courtroom to testify, he told the court that he had decided not to testify because his inability to see the proceedings left him unable to "ga[u]ge whether it would be better for [him] to testify or not." He also complained about the court's refusal to let him watch the trial from outside the courtroom. He asserted that he had been sitting quietly in the holding area next to the courtroom that day and had disrupted the last trial from the holding area because he was "given a tablet with no sound" and believed that he had a right to see the jury. Sueing was removed from the courtroom and brought back to the jail. The case went to the jury that day. Jurors were instructed that Sueing's absence was "not evidence" to consider in determining whether the State proved

the charges beyond a reasonable doubt. The jury found Sueing guilty as charged.

¶15        Sueing was present at his sentencing. In the 2018 case, the trial court sentenced him to concurrent and consecutive terms totaling 40 years' imprisonment. In the 2021 case, the court imposed an aggregate sentence of 3.75 years' imprisonment, to run consecutive to the sentences in the 2018 case. Sueing timely appealed.

## DISCUSSION

¶16        Sueing argues that the trial court violated his constitutional rights to be present and to represent himself at trial, as well as the court's duties under Arizona Rule of Criminal Procedure ("Rule") 9.2 to enable his participation at trial after expelling him from the courtroom. Sueing does not challenge the court's initial ruling excluding him from the courtroom during the 2018 case trial. But he contends that the trial court erred by not revisiting that ruling despite his promise of future good behavior, the passage of time, and the court's affirmative duty to facilitate his participation at trial. We review a constitutional challenge to the trial court's expulsion of a defendant for disruptive conduct for an abuse of discretion. *Illinois v. Allen*, 397 U.S. 337, 343 (1970). The court "must be given sufficient discretion to meet the circumstances of each case" and "[n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." *Id.*; *cf. State v. Stewart*, 139 Ariz. 50, 54 (1984) (citing *Allen* in support of applying an abuse-of-discretion standard to the trial court's decision to shackle a defendant with a history of violence and escape). We review the denial of a motion for self-representation for an abuse of discretion. *State v. Dunbar*, 249 Ariz. 37, 44 ¶ 10 (App. 2020).

I.        **The trial court permissibly excluded Sueing from his trials.**

   A. **The court did not violate Sueing's constitutional right to be present.**

¶17        The United States and Arizona Constitutions protect a defendant's right to be present at trial. *See* U.S. Const. amends. VI, XIV; Ariz. Const. art. 2, § 24; *Allen*, 397 U.S. at 338 (confrontation clause); *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (due process). But that right is not absolute. The trial court has both the right and the responsibility to conduct trials without disruption, and it may take measures necessary to dispose of cases in an orderly fashion. *State v. Delvecchio*, 110 Ariz. 396, 400 (1974). A defendant may forfeit his right to be present at trial if, "after he has been warned by the judge that he will be removed if he continues his disruptive

6

behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 U.S. at 343; *see also* Rule 9.2(a) ("A defendant who engages in disruptive conduct, after being warned that such conduct will result in expulsion from a proceeding, forfeits the right to be present at that proceeding."). He can reclaim this right "as soon as [he] is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Allen*, 397 U.S. at 343; *see also* Rule 9.2(a) ("At the time of expulsion, the court must inform the defendant that he or she can return upon a promise to the court of future orderly conduct.").

¶18 The court did not abuse its discretion in excluding Sueing from his trials. In the 2018 case, the record supports the trial court's determination that Sueing's violent, obstreperous, and unpredictable behavior warranted his removal from the courtroom, and after further misconduct, from the courthouse entirely. Sueing's argument that the court could have done more to understand why he was disruptive in the holding area adjoining the courtroom—which is largely based on self-serving statements he made months after those disruptions—does not establish an abuse of discretion. Nor did Sueing's promise of "no more disturbances" entitle him to return to court. Given his recent history of belligerence, the court did not have to accept his promise of "no more disturbances." *See, e.g.*, *Douglas v. State*, 214 P.3d 312, 323–24 (Alaska 2009) (interpreting *Allen* as allowing a trial court to forbid a defendant's return to the courtroom based on its determination that the defendant's prior conduct undermined the credibility of his promise to behave); *United States v. Munn*, 507 F.2d 563, 568 (10th Cir. 1974) (interpreting same). Indeed, Sueing's insubordinate conduct while on the stand in the 2018 case discredited his earlier promise of good behavior.

¶19 Nor did the trial court err in adhering to its earlier rulings on exclusion when the 2021 case went to trial. Ten weeks elapsed between Sueing's trials in the 2018 and 2021 cases. Between the end of trial in the 2018 case—which was punctuated by Sueing's contumacious behavior on the stand—and the start of trial in the 2021 case, Sueing never signaled that he was "willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Allen*, 397 U.S. at 343. He provided no verbal assurances of future good behavior, nor did he show, through his conduct, that he could control himself in court proceedings. *Cf. State v. Forte*, 222 Ariz. 389, 393 ¶ 10 (App. 2009) (holding that a defendant's "disruptive behavior at an earlier hearing was not, standing alone, a sufficient ground for excluding [the defendant] from [a

later hearing]" where the defendant demonstrated good behavior at an intervening hearing that "indicated he was willing to cooperate with the process"). The mere passage of time and change of case, combined with defense counsel's requests that Sueing be allowed to attend trial, did not require the court to permit his return. Therefore, the court did not violate Sueing's constitutional right to be present at his trials.

### B.    The court complied with Rule 9.2.

¶20        Sueing does not challenge his initial expulsion from the courtroom under Rule 9.2(a). But he contends that the trial court violated Rule 9.2(b) and (c) by (1) preventing him from watching the trial virtually without conducting a more thorough inquiry into his disruption from the holding area during trial in the 2018 case, (2) denying his request to return upon a promise not to engage in further disruptive behavior, and (3) not complying with its "continuing duty" to permit his participation in the trial proceedings.

¶21        Sueing does not establish error. The trial court did not violate Rule 9.2(b) or (c). After the defendant's expulsion, "the court must use every feasible means to allow the defendant to watch, hear, and be informed of the proceeding's progress, and to consult with counsel at reasonable intervals. The court should inquire periodically if the defendant wishes to reacquire the right to be present." Rule 9.2(b). If the defendant "personally assures the court of future good behavior," then "[t]he court must allow the defendant to return to the proceeding." Rule 9.2(c). But upon later disruptive conduct, "the court may exclude the defendant from the proceeding without additional warning." Rule 9.2(c).

¶22        Here, the trial court "use[d] every feasible means" to allow Sueing to follow the trial proceedings after expelling him from the courtroom. First, the court allowed him to watch the proceedings from an area adjoining the courtroom. Sueing does not dispute that upon receiving that opportunity, he began banging on the door to the courtroom and told an officer that he would continue to do so. Rule 9.2(b) did not oblige the court to inquire further into Sueing's discontent before expelling him from the courthouse entirely. And the court continued to comply with its duty under the rule by investigating whether Sueing could watch the trial from the jail. *Cf. State v. Chapple*, 36 P.3d 1025, 1031–32 (Wash. 2001) (holding that trial court's refusal to allow the defendant to watch trial from a courtroom-adjacent area after expelling him for disruptive conduct complied with the "least restrictive means" requirement where the court had personal

knowledge of the defendant's misconduct and potential for violence and where it had investigated other alternatives).

¶23        Given the short proximity in time between trials in the 2018 and 2021 cases, the relationship of the two cases, and the continuity of presiding judges in the cases, the court's efforts to allow Sueing to follow the trial in the 2018 case also satisfied its duties in the 2021 case. Nothing in Rule 9.2(b) requires the trial court to disregard a defendant's prior misconduct simply because a new trial is at issue.

¶24        The trial court also did not breach the other provisions of Rule 9.2(b). Contrary to Sueing's assertions, the record shows that Sueing was able to "consult with counsel at reasonable intervals," Rule 9.2(b), during his absence from court in the 2018 case. On the fourth day of trial, defense counsel referred to having a 40-minute conversation with Sueing the day before and "talking continuously to [him]." Even if Sueing did not speak with his attorney during the State's presentation of evidence in the 2021 case, the court did not violate its obligation to enable such communication. The phrase "at reasonable intervals" inherently entails some degree of discretion and consideration of the circumstances. *Cf. Seven Springs Ranch, Inc. v. State ex rel. Ariz. Dep't of Water Resources*, 156 Ariz. 471, 474 (App. 1987) (holding that a statute requiring an official to "give reasonable notice of [a] hearing appropriate to the circumstances" gave the official discretion to determine whether actual notice should be used in addition to notice by publication). Trial in the 2021 case was brief. The State called only two witnesses—the attorney whom Sueing attacked and an officer who observed the attack—with the latter examination being particularly short. The record shows that Sueing spoke with his attorney after the State rested its case. Under the circumstances, the trial court did not violate Rule 9.2(b) by not enabling Sueing to speak with his attorney while the State presented its two witnesses.

¶25        Nor did the trial court violate Rule 9.2(b) by failing to "inquire periodically if [Sueing] wishe[d] to reacquire the right to be present." Like "reasonable intervals," a "periodic inquiry" inherently entails an exercise of discretion in consideration of the circumstances. Such inquiry was futile here. Jury selection and the presentation of evidence in the 2018 case lasted six days. Sueing refused transport on the first day. He was expelled for disruptive conduct on the second day. He asked for and was denied the opportunity to return on the fourth day, and he was present, and again expelled for disruptive conduct, on the sixth day.

¶26 The court's inquiry about Sueing's potential return on day three or five of trial would have served no purpose given the timeline of events. *Cf. United States v. Nunez*, 877 F.2d 1475, 1478 (10th Cir. 1989) (holding that *Allen* did not require the trial court, after the defendant's expulsion, to bring him back "at least once a day to ascertain whether he would promise to behave properly and if he did so promise, [allow him] to stay in the courtroom unless, and until, his next outbreak, *ad infinitum*"). Similarly, the court's inquiring about Sueing's return to trial in the 2021 case would have had no purpose given the brevity of the proceedings in that matter. Further, Rule 9.2(b)'s "periodic inquiry" instruction may be interpreted as directory, not mandatory, given its contrasting use of "must" in the "must use every feasible means" provision. *See Manhattan-Dickman Constr. Co. v. Shawler*, 113 Ariz. 549, 555 (1976) ("'Should' can be used to indicate desirability or preference rather than an obligation or mandate.").

¶27 The trial court also complied with Rule 9.2(c)'s requirement that it "allow the defendant to return to the proceeding" upon the defendant's "personal[ ] assur[ance] . . . of future good behavior." His argument suggests that the court should have made an effort "every day" at trial to reintegrate him. But the court did not err. After the court excluded Sueing from the courthouse during the 2018 trial, he made just one overture, through counsel, "promis[ing] no more disturbances." The court determined that his avowal did not justify his return, and Sueing's subsequent conduct while on the stand confirmed that he could not keep his promise to behave. Rule 9.2 does not specify whether every promise of future good behavior, no matter the circumstances, triggers a duty to allow the defendant's return. Consistent with decisions affording the trial court discretion to evaluate the credibility of a defendant's promise under *Illinois v. Allen*, Rule 9.2(c) gives the trial court discretion to determine whether a defendant's assurance of future good behavior is credible. The record supports the court's finding here that Sueing's promise was unreliable. Therefore, the court did not violate Sueing's constitutional right to be present.

## II.    The trial court did not violate Sueing's right to represent himself.

¶28 The trial court did not violate Sueing's right to represent himself. The right to represent oneself is constitutionally protected. *State v. Dann*, 220 Ariz. 351, 359 ¶ 16 (2009) (citing U.S. Const. amends. VI, XIV; Ariz. Const. art. II, § 24); *see also Faretta v. California*, 422 U.S. 806, 834–36 (1975). But like the right to be present, the right of self-representation is not absolute. *See Indiana v. Edwards*, 554 U.S. 164, 171 (2008) (referring to various limitations on such right). Nor does it "exist in a vacuum." *State v. De Nistor*,

143 Ariz. 407, 412 (1985). By forfeiting his right to attend trial through his disruptive conduct, Sueing effectively forfeited any right, or possibility, of self-representation. *Cf. Faretta*, 422 U.S. at 834 n.46 ("[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."); *Delvecchio*, 110 Ariz. at 402 (finding no error where the trial court allowed advisory counsel to take over the defense of a self-represented defendant when he was expelled from the courtroom for disruptive conduct).

**¶29** Even if we disregard the impossibility of Sueing representing himself while being excluded from the courtroom, the trial court did not err in denying his requests for self-representation. Sueing surrendered the right to represent himself in the 2018 case after being warned that he would not be allowed to "flip-flop back." He then declined to reclaim that right when the court offered it to him. Under the circumstances, the court did not abuse its discretion by denying Sueing's further requests for self-representation in the 2018 case. *See State v. Boggs*, 218 Ariz. 325, 338 ¶ 62 (2008) (finding no abuse of discretion in the trial court's denial of the defendant's second request for self-representation after the defendant relinquished such right upon being warned that he would not be allowed to reclaim it); *Dunbar*, 249 Ariz. at 46 ¶ 17 (holding that the defendant "forfeited his right to self-representation through his vacillating positions" after being warned that the court "was not going to allow him to continually change his mind").

**¶30** Sueing argues that he did not engage in misconduct when he represented himself before. But the record supports the trial court's findings that allowing Sueing to represent himself in either case could endanger others and run the risk of him deliberately creating a mistrial. *See De Nistor*, 143 Ariz. at 412 (observing that a defendant's right of self-representation must be balanced against the government's right to an orderly, judicious trial); *United States v. Mack*, 362 F.3d 597, 601 (9th Cir. 2004) (noting that "the defendant's right to self-representation [does not] overcome[] the court's right to maintain order in the courtroom and conduct proceedings in a manner consonant with our trial traditions"). Sueing's argument that the trial court should have allowed him to represent himself, rather than be represented by counsel during his exclusion from the court, is unconvincing because of his disruptive behavior. The court did not err.

## CONCLUSION

**¶31** For the foregoing reasons, we affirm Sueing's convictions and sentences in both cases.

