SUPREME COURT OF ARIZONA

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-01-0270-AP |
| Appellee, | ) | |
| | ) | |
| v | ) | Maricopa County Superior |
| | ) | Court |
| CHRISTOPHER GEORGE THEODORE | ) | No. CR1996-011714 |
| LAMAR, | ) | |
| | ) | **S U P P L E M E N T A L** |
| Appellant. | ) | **O P I N I O N** |
| | ) | |
| _____ | ) | |

Appeal from the Superior Court of Maricopa County
No. CR1996-011714
The Honorable Stephen A. Gerst

**AFFIRMED IN PART; REMANDED FOR RESENTENCING**
_____

JANET NAPOLITANO, FORMER ARIZONA ATTORNEY GENERAL          Phoenix
TERRY GODDARD, ARIZONA ATTORNEY GENERAL
    By      Kent E. Cattani, Chief Counsel
            Capital Litigation Section
            Robert L. Ellman, Assistant Attorney General
Attorneys for the State of Arizona

SUSAN M. SHERWIN, MARICOPA COUNTY                          Phoenix
OFFICE OF THE LEGAL ADVOCATE
    By      Tennie B. Martin, Formerly with Maricopa Office of
            Legal Advocate
            Brent E. Graham, Formerly with Maricopa County Office
            of Legal Advocate
            Thomas J. Dennis, Deputy Legal Advocate
Attorneys for Christopher George Theodore Lamar
_____

**M c G R E G O R**, Chief Justice

**¶1**      The primary issue before us is whether reversible error

occurred when a trial judge sentenced Christopher George Theodore

Lamar to death under a procedure that violated *Ring v. Arizona*, 536

U.S. 584 (2002) (*Ring II*).  In addition, we must determine whether

the imposition of an aggravated sentence for Lamar's kidnapping conviction violated *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531 (2004). We exercise jurisdiction pursuant to Article VI, Section 5.3 of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) section 13-4031 (2001). Based on our review of the record, we cannot conclude that the *Ring II* violation constituted harmless error. We find no *Blakely* error present in Lamar's non-capital, aggravated sentence for kidnapping.

## I.

¶2 Lamar met and became involved with Myla Hogan in April 1996. While the two were dating, Hogan lived in a house on Eighty-first Avenue in Peoria, Arizona, with several other people, including Mary Keovorabouth, Ouday "Tim" Panmany, Vincent Macchirella, Richard Valdez, and Abraham Hermosillo.

¶3 Prior to May 11, 1996, the group devised a plan to kidnap and rob Ronald Jones. On May 11, Hogan called Jones's pager to invite him to lunch. When Hogan and Jones returned to the house on Eighty-first Avenue after lunch, Lamar and the others were waiting for Jones. Lamar punched Jones. After Jones fell to the floor, Macchirella pointed a gun at him, and Hermosillo bound Jones's hands and ankles with duct tape. The group then held Jones captive at gunpoint for several hours.

¶4 When it became dark, Lamar forced Jones into the front passenger seat of Jones's car. Lamar directed Macchirella to drive to Lamar and Hermosillo's old neighborhood. Lamar sat behind Jones

in the car.  At one point, Lamar held the gun to Jones's head and pulled the trigger, but the gun did not fire.  Eventually, Lamar directed Macchirella to stop the car.  The three men exited the vehicle and walked to the back of the car.  Lamar then shot Jones. The medical examiner testified that Jones suffered two gunshot wounds to the head.  Lamar and his accomplices then buried Jones's body and set his car on fire.[1]

¶5      A jury found Lamar guilty of kidnapping and first degree murder on both premeditated and felony murder theories.  Following the jury=s guilty verdict, the trial judge conducted a sentencing hearing to determine whether any aggravating or mitigating circumstances existed.  A.R.S. § 13-703 (2001).  The judge found beyond a reasonable doubt the presence of three aggravating circumstances:  (1) Lamar murdered Jones in expectation of the receipt of pecuniary gain, A.R.S. § 13-703.F.5; (2) Lamar murdered Jones in an especially heinous, cruel, or depraved manner, A.R.S. § 13-703.F.6; and (3) Lamar committed first degree murder while he was on supervised release, A.R.S. § 13-703.F.7.  The judge found that Lamar failed to establish any statutory mitigating circumstances, A.R.S. § 13-703.G, but found Lamar established three non-statutory mitigating circumstances: (1) mental health issues; (2) dysfunctional family; and (3) good character.  The judge determined that the mitigating circumstances were not sufficiently

_____

[1]      See *State v. Lamar*, 205 Ariz. 431, 433-35 ¶¶ 3-20, 72 P.3d 831, 833-35 (2003), for a more detailed account of the facts.

3

substantial to outweigh the aggravating circumstances and therefore sentenced Lamar to death.  A.R.S. § 13-703.E.

¶6       We affirmed Lamar's convictions on his direct appeal. *Lamar*, 205 Ariz. at 442 ¶ 56, 72 P.3d at 842.  This supplemental opinion reviews only Lamar=s sentences.  Lamar raises several arguments to challenge his death sentence.  We conclude that the *Ring II* violation requires that Lamar must be resentenced for his first degree murder conviction.

¶7       In light of our holding that Lamar must be resentenced, most of the sentencing issues raised by Lamar are moot.  Lamar's argument that the F.7 aggravating circumstance does not apply to persons on release from federal, rather than state prison, however, may arise at resentencing.  Therefore, we address that issue.

## II.

¶8       In *Ring II*, the United States Supreme Court held that Arizona's former capital sentencing scheme violated the right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution.  *Ring II*, 536 U.S. at 609.  The Court declared that "[c]apital defendants, no less than noncapital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id*. at 589.  The Court reversed our decision in *State v. Ring*, 200 Ariz. 267, 25 P.3d 1139 (2001) (*Ring I*), and remanded for further proceedings consistent with its decision.  *Ring II*, 536 U.S. at

4

609.

¶9        Following the Supreme Court's decision, we consolidated all death penalty cases in which this court had not yet issued a direct appeal mandate to determine whether *Ring II* requires this court to reverse or vacate the defendants' death sentences.  In *State v. Ring*, 204 Ariz. 534, 555 ¶ 53, 65 P.3d 915, 936 (2003) (*Ring III*), we held that we will examine a death sentence imposed under Arizona's superseded capital sentencing statutes for harmless error.

## III.

¶10       The State concedes that application of this court's decision in *Ring III* requires that this matter be remanded for resentencing because we cannot conclude, beyond a reasonable doubt, that no reasonable jury would have failed to find the F.5 factor established or that no reasonable jury would have reached conclusions about the mitigating factors different than those of the trial judge.

## A.

¶11       To establish the F.5 aggravating circumstance, the state must prove that "[t]he defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value."  A.R.S. § 13-703.F.5 (Supp. 2003). The pecuniary gain aggravating circumstance exists only "if the expectation of pecuniary gain is a motive, cause, or impetus for

the murder and not merely a result of the murder." *State v. Hyde*, 186 Ariz. 252, 280, 921 P.2d 655, 683 (1996). Proving that a defendant both robbed and murdered his victim does not satisfy the state's burden. *See State v. Medina*, 193 Ariz. 504, 513 ¶ 32, 975 P.2d 94, 103 (1999) ("The existence of an economic motive at some point during the events surrounding a murder is not enough to establish (F)(5)."). The state also must establish a *motivating* connection between the robbery and the homicide. *Id*.

¶12    The trial judge found that one of the primary motivations for the murder was the robbery of the victim and the theft of the victim's money or drugs. The State, while arguing that the evidence supports the trial judge's finding that one of Lamar's primary motivations was pecuniary, concedes that a reasonable factfinder could reach a contrary conclusion. We agree that a reasonable factfinder could find or could fail to find a pecuniary motive. Accordingly, we conclude that the pecuniary gain finding was not harmless error.

### B.

¶13    To establish the F.7 aggravating circumstance, the state must prove that "[t]he defendant committed the offense while . . . [i]n the custody of or on authorized or unauthorized release from the state department of corrections, a law enforcement agency or a county or city jail." A.R.S. § 13-703.F.7.a (Supp. 2003). Fred Chilese, a supervisor from the United States Probation Department, testified that Lamar was convicted in federal court of possession

6

with intent to distribute cocaine and that his sentence included thirty-six months of supervised release commencing upon Lamar's release from the Federal Bureau of Prisons.  Furthermore, the State introduced documentary evidence to corroborate Chilese's testimony. Lamar was released from prison on March 21, 1996, and less than two months later, while on supervised release, murdered Jones.

¶14       Lamar did not challenge these facts at trial or on appeal.  Lamar asserts, however, that the F.7.a aggravating factor cannot apply to him because he was not on authorized or unauthorized release from a *state* department of corrections when he murdered Jones.  We agree with Lamar that the Federal Bureau of Prisons is not a *state* department of corrections, but we disagree with Lamar's assertion that the F.7 factor does not apply to him.

¶15       The Department of Justice controls the Federal Bureau of Prisons.  *See* Bureau of Prisons Act, ch. 274, 46 Stat. 325 (1930) ("there is hereby established in the Department of Justice a Bureau of Prisons"); *see also* 18 U.S.C. § 4041 (Supp. 2004) ("The Bureau of Prisons shall be in charge of a director appointed by and serving under the Attorney General."); *Moore v. Olson*, 368 F.3d 757, 758 (7th Cir. 2004) ("The Department of Justice . . . operates the Federal Bureau of Prisons . . . .").  The Department of Justice qualifies as a law enforcement agency.  *See*, *e.g.*, *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) (referring to "the Department of Justice or other law enforcement agencies"); *United States v. Escalante*, 554 F.2d 970, 975 (9th Cir. 1977) (mentioning

7

"federal law enforcement agencies, including the Department of Justice"); *United States v. Juarez-Rodriguez*, 568 F.2d 120, 124 (9th Cir. 1976) (same); *Roney v. United States*, 790 F. Supp. 23, 28 (D.D.C. 1992) (same). Because the Federal Bureau of Prisons falls within the Department of Justice and because the Department of Justice is a "law enforcement agency," it follows that the Federal Bureau of Prisons is a "law enforcement agency" under the terms of A.R.S. § 13-703.F.7. We therefore reject Lamar's legal assertion that federal supervised release does not fall under the purview of the F.7 aggravating factor.

¶16      Our interpretation of A.R.S. § 13-703.F.7 not only follows the language of the statute but also effectuates legislative intent. "In statutory interpretation the primary principle is to determine and give effect to the legislative intent behind the statute." *Martin v. Martin*, 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988). If we were to adopt Lamar's reading of the statute, then the F.7 aggravating circumstance would apply to individuals who committed offenses while on release from a state correctional institution but not from a federal correctional institution. We do not think the legislature intended to punish more severely individuals on release from state correctional institutions than those on release from the Federal Bureau of Prisons.

¶17      We now turn to the question of whether a jury must determine whether the state has established the F.7 aggravating

8

factor. In *Ring III*, we held that the Sixth Amendment does not require a jury to determine aggravating circumstances for prior convictions under section 13-703.F.1 and F.2. 204 Ariz. at 556 ¶ 55, 65 P.3d at 937. We did not, however, address the aggravating circumstance for offenses committed while on release from a state corrections department or law enforcement agency.

¶18 In reaching our decision in *Ring III* regarding the F.1 and F.2 aggravating circumstances, we reasoned that

> [t]he characteristic of a prior conviction aggravating circumstance that sets it apart from other circumstances is that the original criminal proceeding, through either a guilty plea or a verdict of guilt, established the circumstance. No additional benefit derives from having a jury re-find an aggravating circumstance already established through a guilty plea or a jury verdict.

*Id*. at 558 ¶ 65, 65 P.3d at 939. In contast to situations involving the F.1 and F.2 aggravating circumstances, no jury has found the underlying facts necessary to establish the F.7 aggravating circumstance. A dispute may arise as to whether the individual who committed the offense was in custody at the time of the offense due to questions as to the date(s) of the offense(s) in relationship to the date of custody or release. Thus, we hold that the Sixth Amendment requires a jury to determine whether the defendant committed the offense while in the custody of or on authorized release from the state department of corrections, a law enforcement agency, or a county or city jail.

¶19 In this case, however, Lamar did not submit any evidence nor did he present any arguments challenging any of the underlying

9

facts regarding the F.7 aggravating circumstance. He claims only that the statute does not apply to individuals on release from the Federal Bureau of Prisons. In *Ring III*, we held that "[w]hen a defendant simply fails to challenge an aggravating circumstance at the penalty phase, the state retains the burden of proving the aggravator's existence beyond a reasonable doubt. Our inquiry then becomes whether the state has met its burden." *Id*. at 563 ¶ 94, 65 P.3d at 944 (citation omitted). Here, despite the error, we conclude that the State has met its burden and proved beyond a reasonable doubt that Lamar was on authorized release from the Federal Bureau of Prisons at the time that he committed his offense. Any error as to this factor, therefore, is harmless. *Id*. at 552 ¶ 45, 65 P.3d at 933.

**IV.**

¶20 The trial judge found that Lamar failed to prove, by a preponderance of the evidence, any statutory mitigating circumstances. Lamar asserts that he presented sufficient evidence, through expert witness testimony, to allow a reasonable factfinder to conclude that he suffered from an impairment of brain function that rendered him significantly impaired. A.R.S. § 13-703.G.1.

¶21 The trial judge found that Lamar established three non-statutory mitigating circumstances: (1) mental health issues; (2) dysfunctional family; and (3) good character. The judge rejected the following non-statutory mitigating circumstances: (1) residual

10

doubt; (2) acting under the influence of drugs and/or alcohol; (3) ability to be rehabilitated; and (4) culpability of others/ sentencing disparity.

¶22    The State concedes that the record does not allow us to conclude, beyond a reasonable doubt, that a jury would have assessed the defense expert's testimony and opinion similarly and would have failed to accord more weight to the expert's testimony. A different finding of mitigating circumstances could affect a factfinder's determination whether the mitigating circumstances are "sufficiently substantial to call for leniency." *Id.* § 13-703.E. We cannot conclude, therefore, that the *Ring II* error was harmless in this case.

**V.**

¶23    Lamar was also convicted of kidnapping.  The trial judge made a finding of dangerousness pursuant to A.R.S. § 13-604.I (Supp. 1996)[2] and sentenced Lamar to an aggravated term of twenty-

---

[2]    Lamar does not challenge the trial judge's finding of his eligibility to be sentenced under A.R.S. § 13-604 (Supp. 1996).  We note, however, that the *Apprendi/Blakely* line of cases does not prevent Lamar from falling within that section.  A defendant is eligible for sentencing under section 13-604.I if he is convicted "of a class 2 or 3 felony involving discharge, use or threatening exhibition of a deadly weapon or dangerous instrument or [is convicted] of a class 2 or 3 felony when the intentional or knowing infliction of serious physical injury upon another has occurred." A.R.S. § 13-604.I.  Kidnapping is a class 2 felony.  A.R.S. § 13-1304 (1989).  Serious physical injury is defined as, among other things, "physical injury which creates a reasonable risk of death." A.R.S. § 13-105.34 (1989).  The jury found, beyond a reasonable doubt, that Lamar murdered the victim of his kidnapping.  Thus, it is implicit in the jury's verdict that Lamar inflicted serious

one years, finding seven statutory aggravating factors pursuant to the terms of A.R.S. § 13-702 (Supp. 1996).[3]  In a second supplemental brief, Lamar alleged for the first time that his non-capital sentences were imposed in violation of the United States Supreme Court's decision in *Blakely*.  In sum, Lamar argues that the failure of a jury to find, beyond a reasonable doubt, the existence of those aggravating factors, violated his Sixth Amendment right to a jury trial.

**¶24**    In *Blakely*, the United States Supreme Court held that any fact legally essential to enhance a defendant's non-capital sentence beyond the statutory maximum for his crime must be proven to a jury beyond a reasonable doubt.  *Id*. at __, 124 S. Ct. at 2543.  Failure to do so violates the defendant's Sixth Amendment right to a jury trial.  *Id.*

**¶25**    Lamar was sentenced under A.R.S. § 13-604.I, which provides for a presumptive term of ten and one-half years.  That section also provides a maximum aggravated term of up to twenty-one

---

injury upon the victim of his kidnapping, *see Ring v. Arizona*, 204 Ariz. 534, 559-60 ¶ 74, 65 P.3d 915, 940-41 (2003), and he is eligible for sentencing under section 13-604.I.

[3]    The judge found the following: that Lamar had inflicted or threatened the infliction of serious physical injury, A.R.S. § 13-702.C.1 (Supp. 1996), that Lamar had used or threatened to use a deadly weapon or dangerous instrument, § 13-702.C.2, that Lamar had committed his crime with the help of an accomplice, § 13-702.C.4, that Lamar had committed his offense in an especially heinous, cruel, and depraved manner, § 13-702.C.5, that Lamar had committed the offense for pecuniary gain, § 13-702.C.6, that Lamar's crime caused emotional and financial harm to the victim, § 13-702.C.9,

years. To impose an aggravated sentence, the court must consider A.R.S. § 13-702, subsections B, C, and D. In Lamar's case, as previously noted, the trial judge did just that, finding the existence of seven aggravating factors. *See supra* n.3. One of those factors falls within section 13-702.C.11, because Lamar had been previously convicted of a felony within ten years of his instant offense.

¶26 The United States Supreme Court affirmed in *Apprendi* that the fact of a defendant's prior conviction need not be submitted to a jury and proven beyond a reasonable doubt. 530 U.S. 466, 489 (2000). As we recently held in *State v. Martinez*, ___ Ariz. ___, ___ P.3d ___ (2005), once a single *Blakely*-compliant or *Blakely*-exempt factor has been found, the defendant is eligible for the maximum penalty authorized under the sentencing statute. The trial judge then is free to consider additional aggravating factors in determining the actual sentence to impose, up to the maximum sentence prescribed by the sentencing statute. *Id.* at ___ ¶ 25, ___ P.3d at ___. Here, because dangerousness was implicit in the jury's verdict on the first degree murder charge, the trial court properly applied A.R.S. § 13-604.I in sentencing Lamar. Moreover, Lamar's prior felony conviction was sufficient to expose him to the maximum sentence under that statute, twenty-one years, without implicating *Blakely*. We hold, therefore, that the trial court did

and that Lamar had been convicted of a felony within ten years preceding the date of this offense, § 13-702.C.11.

not err in imposing a twenty-one year sentence for Lamar's kidnapping conviction.

## VI.

**¶27** For the foregoing reasons, we vacate Lamar's death sentence and remand for resentencing under A.R.S. §§ 13-703 and 13-703.01 (Supp. 2003). We affirm the trial court's imposition of an aggravated sentence for Lamar's kidnapping conviction.


_____
                              Ruth V. McGregor, Chief Justice


CONCURRING:


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
Charles E. Jones, Justice (Retired)


14