NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CURTIS BENJAMIN HOLLINGSWORTH, *Appellant.*

No. 1 CA-CR 12-0684
FILED 3-3-2016

Appeal from the Superior Court in Yavapai County
No.  P1300CR201101229
The Honorable Tina R. Ainley, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Yavapai County Public Defender's Office, Prescott
By Robert K. Gundacker
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Donn Kessler and Judge Peter B. Swann joined.

**P O R T L E Y**, Judge:

¶1        Curtis Benjamin Hollingsworth appeals his conviction and sentencing for kidnapping.  In this case, we must resolve two issues.  First, did the trial court violate Hollingsworth's right to be free from double jeopardy by allowing him to be retried after the prosecutor's pretrial and trial conduct caused a mistrial? Second, did the prosecutor's misconduct in the second trial warrant reversal?  For the following reasons, we affirm.

## FACTUAL[1] AND PROCEDURAL BACKGROUND

¶2        While driving his Buick in Cordes Lakes in December 2011, Hollingsworth followed the victim, a seventeen-year-old girl taking an evening walk.  When the victim realized she was being followed, she ran and thought she was safe when she saw the Buick parked next to a store.  But as she walked past a church parking lot, the Buick came towards her and, before she could run, Hollingsworth opened the driver's side door, grabbed her right wrist and told her to "[g]et in my car."  Although he grabbed her hard enough to leave marks on her wrist, she broke free and ran into the front yard of a nearby house.  Hollingsworth drove slowly by the front of the house, but sped away after the victim yelled at him.

¶3        The victim ran home, told her mother about the incident, and her mother called 9-1-1.  The victim gave the deputy sheriff a detailed description of the Buick, including its license plate number.  She also told the deputy that she saw the driver, and described the shirt he was wearing as either "yellow or cream-colored" with "dark stripes going down vertically," and told the deputy that the driver had a beer belly.

---

[1] We view the facts in the light most favorable to sustaining the jury's verdict and resolve all inferences against defendant.  *State v. Vandever*, 211 Ariz. 206, 207 n.2, 119 P.3d 473, 474 n.2 (App. 2005).

¶4             The sheriff's office quickly traced the license plate to Hollingsworth, and a deputy went to Hollingsworth's house.  The deputy saw a Buick that matched the description and the license plate number given by the victim parked in front of Hollingsworth's house.  He touched the car, and the front grille area felt warm, which indicated that the car had been driven recently.  Hollingsworth answered the front door wearing a shirt that matched the description of the shirt given by the victim.  After getting a warrant, the deputies searched Hollingsworth's car, and found a box of condoms in the glove compartment.

## I.      First Trial

¶5             Hollingsworth was arrested, charged and the case proceeded to trial.  Although all the police reports and discovery materials indicated that the victim said she could not see the driver's face, the prosecutor asked, "Is that man who was driving in the vehicle in the courtroom today?"  The victim affirmatively identified Hollingsworth.  Then, over objection, the prosecutor introduced Exhibit 170, a picture of Hollingsworth in the shirt when he was arrested, and Exhibit 171, a photograph of an officer holding the shirt Hollingsworth was wearing when he was arrested.

¶6             During the cross-examination of the victim, the following exchange occurred:

> Defense Counsel:  And all you could see was a cream-colored shirt with dark stripes?
>
> Victim: (Nodding head affirmatively.)
>
> Defense Counsel: Yes?
>
> Victim:  Yes.
>
> Defense Counsel:  And you could not see his face.
>
> Victim:  No.
>
> Defense Counsel:  The officers never did a photo lineup with you, did they?

3

Victim: No.

Defense Counsel: *So when you identified Mr. Hollingsworth earlier, you're not sure that's him.*

Victim: *They showed me a picture afterwards.*

Defense Counsel: Who showed you a picture?

Victim: They showed me when I went to the courtroom. When I came in to talk to them, *they asked me if this is the shirt and this is the guy inside the Buick.*

Defense Counsel: The State did that, or the Victim Services?

Victim: I don't know.

Defense Counsel: [The prosecutor] or Julie . . . Judy?

Victim: They showed me the picture.

Defense Counsel: Who?

Victim: The people you just identified.

Defense Counsel: When did they show you this picture?

Victim: When I first talked to them.

Defense Counsel: And how long ago was that?

Victim: I don't remember.

[* * * *]

Victim: When I first met him.

Defense Counsel: And when was that?

Victim: Maybe a month ago.

Defense Counsel: When did Judy show you the picture?

Victim: They were together.

Defense Counsel: They were together a month ago. *But on December 4th, 2011, you could not identify this person.*

Victim: *No.*

(Emphasis added.)

¶7            On redirect, the victim said:

Prosecutor: What have I continuously told you?

Victim: Tell nothing but the truth.

Prosecutor: Have you been telling the truth?

Victim: Yes.

Prosecutor: *[W]hen I showed you this photo, Exhibit 170, did I simply ask you if you recognized who that was?*

Victim: Yes.

Prosecutor: Who is that?

Victim: That's Curtis.

Prosecutor: Do you have any doubts whatsoever, that this man right here—right here — You see him?

Victim: Yes.

> Prosecutor:  —is the man who grabbed you that
> night on December 4th?
>
> Victim:  No.

(Emphasis added.)

## II.    Motion for Mistrial

**¶8**        Hollingsworth moved to preclude the victim's pretrial and in-court identifications under *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969).  He argued that the pretrial identification made one month before trial was tainted and unduly suggestive, and the in-court identification should have been precluded because the State never disclosed that the victim could now identify Hollingsworth.

**¶9**        The court held a separate evidentiary hearing, and the parties stipulated that the court could review the transcript of the victim's trial testimony.  Detective Marvin Cline, who interviewed Hollingsworth, testified about Hollingsworth's statements, which were similar to the victim's statements.  The detective testified that Hollingsworth admitted that he had driven by a young female wearing clothes similar to the victim's apparel while he was in Cordes Lakes earlier that evening.  Hollingsworth explained, however, that the girl had been walking in the middle of the road, in his lane of travel, and that, when he slowed his vehicle down to pass her, the girl yelled at him something to the effect of, "Get out of here." He also said that she might be able "to identify him because he had slowed down to go by her."

**¶10**        After submitting the evidence, the prosecutor acknowledged that showing the victim a one-person photograph before trial would be a suggestive pretrial identification procedure.  He argued, however, that in light of *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972), the victim's identification of Hollingsworth should not be precluded given her detailed description of Hollingsworth's vehicle, license plate number, and shirt.

**¶11**        Hollingsworth then orally amended his *Dessureault* motion to request a mistrial or dismissal, and argued that the prosecutor admitted showing the victim a photograph of Hollingsworth wearing the shirt and, on redirect, admitted that he showed the victim the picture about a month before trial.  Hollingsworth also argued that not only was the victim's identification tainted, but that none of the information had been provided

before trial; as a result, the conduct amounted to prosecutorial misconduct and violated his right to a fair trial.

¶12        The court recognized that before trial the victim "could not identify the [attacker's] face or hair color," but at trial the victim was "one hundred percent positive that [Hollingsworth] was her attacker," and the court noted there was no testimony explaining why the victim was suddenly sure Hollingsworth was the attacker.  After considering the evidence, including the length of time between the crime, the identification, and the victim's testimony, the court granted a mistrial because "the photo shown to the victim prior to the trial was unduly suggestive."

III.    **Motion to Dismiss for Double Jeopardy and Vindictive Prosecution**

¶13        Before the second trial, and citing *Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984), Hollingsworth moved to dismiss the case with prejudice due to prosecutorial misconduct and due process violations.  He argued that the prosecutor had either "knowingly and intentionally tampered with his primary witness" or acted with indifference to the danger of a mistrial or reversal to obtain a tactical advantage and a conviction.  He also argued that the State's allegations of aggravating factors in the second trial violated due process as a vindictive prosecution.

¶14        In response, the State noted that in the meeting before the first trial the victim had said that she would not forget Hollingsworth's face.  Then, when reviewing trial exhibits with the victim, the prosecutor showed her Exhibit 170, the photograph of Hollingsworth wearing the shirt.  The prosecutor asserted that although he made a mistake by showing the victim the photograph, he did not have an improper purpose or intend to act improperly.  The State also argued that the mistrial and the court's preclusion of the pretrial and in-court identifications were sufficient sanctions.  The State also mentioned the victim told the prosecutor after the mistrial, and for the first time, that she had searched the internet before the first trial looking for Hollingsworth, and found information about him, including his photograph and the fact that he was a level three sex offender.

¶15        The trial court held an evidentiary hearing.  After the hearing, the trial court denied the motion to dismiss.  Although the court found that the prosecutor's conduct was the basis for the mistrial, the court did not find that Hollingsworth had proved prosecutorial misconduct under *Pool*, and, after looking at all the facts and evidence, found that the experienced prosecutor had made a mistake.

**¶16** Hollingsworth filed a special action petition challenging the ruling, but his petition was denied. The second trial proceeded, and based on the court's rulings in the first trial, the prosecutor did not ask and the victim did not identify Hollingsworth directly or with the photograph of him in the shirt. At the conclusion of the trial, Hollingsworth was convicted of kidnapping. After the court found that he had two prior historical felony convictions at the sentencing hearing, Hollingsworth was sentenced to twenty-two years in prison, with credit for presentence incarceration.[2] We have jurisdiction under the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and -4033.[3]

## DISCUSSION

### I. Double Jeopardy

**¶17** Hollingsworth contends that the trial court erred in denying his motion to dismiss the second trial for violation of double jeopardy. We disagree.

**¶18** "The double jeopardy clause of the Fifth Amendment protects a criminal defendant from multiple prosecutions for the same offense." *State v. Minnitt*, 203 Ariz. 431, 437, ¶ 27, 55 P.3d 774, 780 (2002) (citation omitted). The Arizona Constitution "provides the same protection in article 2, section 10, stating that no person shall be 'twice put in jeopardy for the same offense.'" *Id.* The protections afforded by the double jeopardy clause are not absolute, and "[a]s a general rule, if the defendant successfully moves for . . . a mistrial, retrial is not barred on double jeopardy grounds." *Id.* at ¶ 28. There are, however, circumstances, like *Pool*, where intentional and pervasive misconduct on the part of the prosecution structurally impairs the trial and destroys the ability of the tribunal to reach a fair verdict. *Id.* at 781, ¶ 29, 55 P.3d at 781.

**¶19** To resolve the claim that the trial court erred by denying the double jeopardy motion to bar the retrial, "[w]e review a trial court's decision whether to dismiss a prosecution with prejudice under [*Pool*] for an abuse of discretion." *State v. Korovkin*, 202 Ariz. 493, 495, ¶ 5, 47 P.3d 1131, 1133 (App. 2002) (citation omitted); *see State v. Cuffle,* 171 Ariz. 49, 51, 828 P.2d 773, 775 (1992) (noting that "[a]ppellate review of a trial court's findings of fact is limited to a determination of whether those findings are

---

[2] Hollingsworth does not appeal his conviction for misdemeanor assault.
[3] We cite the current version of the statute unless otherwise noted.

clearly erroneous"); *see also United States v. Lopez-Avila*, 678 F.3d 955, 961 (9th Cir. 2012) ("When reviewing a denial of a motion to dismiss on double jeopardy grounds before trial [based on prosecutorial misconduct], this court reviews de novo legal questions but reviews factual findings, including those on which denial may be based, for clear error.") (internal citations and quotation marks omitted). We then review de novo whether double jeopardy should have barred the retrial, a question of law. *State v. Moody*, 208 Ariz. 424, 437, ¶ 18, 94 P.3d 1119, 1132 (2004). Accordingly, to the extent Hollingsworth argues the court erred in finding the prosecutor did not merely make a mistake in showing the victim the photograph of him in the shirt, we review for clear error. And to the extent Hollingsworth argues the court erred in applying those facts to the law, we review de novo.

**¶20**    In *Pool*, our supreme court stated:

> We hold, therefore, that jeopardy attaches under art. 2, § 10 of the Arizona Constitution when a mistrial is granted on motion of defendant or declared by the court under the following conditions:
>
> 1. Mistrial is granted because of improper conduct or actions by the prosecutor; and
>
> 2. such conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal; and
>
> 3. the conduct causes prejudice to the defendant which cannot be cured by means short of a mistrial.

139 Ariz. at 108-09, 677 P.2d at 271-72.

**¶21**    The parties agree that the first and third elements were satisfied. As a result, we have to decide whether the trial court committed clear error in finding that Hollingsworth failed to establish the second element. The second element of the *Pool* analysis can be dissected into three subparts for analysis:

9

(a) such conduct is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but,

(b) taken as a whole, amounts to intentional conduct which the prosecutor knows to be improper and prejudicial, and

(c) which [the prosecutor] pursues for any improper purpose with indifference to a significant resulting danger of mistrial or reversal. *Id.; see State v. Trani*, 200 Ariz. 383, 384, ¶ 7, 26 P.3d 1154, 1155 (App. 2001) (discussing the second element of the *Pool* analysis).

¶22        To decide whether a prosecutor's conduct, in the totality of the circumstances, amounts to "intentional conduct which the prosecutor knows to be improper and prejudicial," a court should "measure what the prosecutor 'intends' and 'knows' by objective factors, which include the situation in which the prosecutor found himself, the evidence of actual knowledge and intent and any other factors which may give rise to an appropriate inference or conclusion." *Pool*, 139 Ariz. at 108-09 n.9, 677 P.2d at 271-72 n.9. And the court may also consider "the prosecutor's own explanations of his 'knowledge' and 'intent' to the extent that such explanation can be given credence in light of the minimum requirements expected of all lawyers." *Id.*

¶23        Hollingsworth argues that the evidence shows that the prosecutor acted with intent and was indifferent to the danger of causing a mistrial. The trial court, however, found that the prosecutor's conduct resulted from a mistake.

¶24        Based on the record, we cannot state that the trial court's finding that the prosecutor's actions resulted from a mistake during his final trial preparations is clearly erroneous. *See State v. Lamar*, 205 Ariz. 431, 440, ¶ 45, 72 P.3d 831, 840 (2003), *supplemented by* 210 Ariz. 571, 115 P.3d 611 (2005) (noting that we will reverse a trial court's finding of fact that the prosecutor's actions were not intentional if it is clearly erroneous). At the evidentiary hearing, the victim on direct examination testified:

Defense Counsel:  So [the prosecutor] knew that you couldn't see the face of your attacker.

Victim:  Yes.

[* * * *]

Defense Counsel:  What did he say when he showed you that picture?

Victim:  Is this the shirt?

Defense Counsel:  He didn't say, "Is this the face?"

Victim:  No.

¶25        On cross-examination, she testified that the prosecutor had shown her several photographs of a map, of her neighborhood, and of a vehicle that would be exhibits at trial and had asked her if she "recognized these photographs."  The following exchange then took place:

Prosecutor:  Do you recall telling me, on June 21st, that you knew the defendant's face, and it was words to the effect that you wouldn't forget it?

Victim:  I don't remember.

Prosecutor:  Do you remember saying something about the pockmarks on his cheeks?

Victim:  Yes.

Prosecutor:  And you told me that prior to trial on June 21st.

Victim: Can you explain what you are trying to ask?

Prosecutor: You told me that prior to the trial beginning.

Victim: Oh, yes.

Prosecutor: Which indicated to me that you knew who Mr. Hollingsworth was.

Victim: Yes.

¶26 On redirect, the victim said that she could not see her attacker's face on the night of the incident. But she said that because Hollingsworth was the only person in the car with a shirt, she assumed it was Hollingsworth when she saw his picture.

¶27 The prosecutor then testified[4] that he had two meetings with the victim before trial: the first on June 12, to give her a copy of the transcript of her interview with Detective Surak; and the second on June 21, to review trial exhibits. During the second meeting, the victim said that she "would not forget Mr. Hollingsworth's face" and "indicated something about the pockmarks on his cheeks," and then he showed her the photograph of Hollingsworth "wearing the shirt that she had described to the detectives." The prosecutor acknowledged that it was a mistake to show her Hollingsworth's photograph, but maintained that he had not indicated to her "in any way, shape or form that this was the person who had grabbed her on December 4." And he only asked her, "if she recognized that photograph."

¶28 On cross-examination, the prosecutor acknowledged reading the police reports and knowing those reports stated that the victim could not see the attacker's face. When asked why he had not then disclosed that the victim could now identify the attacker, the prosecutor said there were multiple police reports and numerous transcripts and audiotapes, and he made a mistake forgetting that she had given previous contrary statements. He acknowledged then that he should have known that showing the victim Hollingsworth's photograph could cause a mistrial, but he did not intend to cause a mistrial. Furthermore, he said that the victim's "confidence that she could identify Mr. Hollingsworth" caused him to "show her a

---

[4] At oral argument, Hollingsworth's counsel asserted that the prosecutor was not under oath when he testified at the hearing. We requested supplemental briefing to address if the prosecutor was under oath. Both parties agree, and the record shows, that the prosecutor was under oath and subject to cross-examination when he testified.

photograph of the shirt with Mr. Hollingsworth wearing it, instead of just the shirt."

¶29        Although our review of the record demonstrates that the prosecutor never answered why he failed to disclose to the defense that he showed the victim a picture of Hollingsworth in the shirt and that she readily was able to identify him, the court accepted the prosecutor's explanation that he was negligent and made a mistake by showing the victim Hollingsworth's photograph wearing the shirt, instead of a photograph of just the shirt.  The court based its ruling, in part, on the victim's testimony that the prosecutor asked her, while showing her the photograph at their pretrial meeting, "Is this the shirt?"  That question supports the court's conclusion that the prosecutor was only showing the victim the photo to identify the shirt; the prosecutor thought the victim had told him she would never forget Hollingsworth's face, so showing her the photo of Hollingsworth in the shirt was only meant to have her identify the shirt.  Consequently, and regardless of whether we would have reached the same conclusion or limited the sanction to a mistrial, there is factual support for the court's finding.  As a result, we cannot find that the court clearly erred in finding the prosecutor simply made a mistake in showing the photo to the victim.  *See Lamar*, 205 Ariz. at 440, ¶ 45, 72 P.3d at 840.[5]

¶30        Hollingsworth also contends that the trial court had an erroneous view of law because the court only focused on the prosecutor showing the victim the photograph instead of reviewing all the alleged prosecutorial misconduct.  *Pool* requires the court to review whether the "[m]istrial is granted because of improper conduct or actions by the prosecutor; and . . . [whether] *such conduct* is not merely the result of legal error, negligence, mistake, or insignificant impropriety."  139 Ariz. at 108-09, 677 P.2d at 271-72 (emphasis added).

¶31        The court granted Hollingsworth's motion for mistrial because the prosecutor showed the victim the unduly suggestive photograph of Hollingsworth in the shirt.  The court then focused on whether the prosecutor acted with intent or was negligent, and found that he negligently made a mistake in preparing for trial.  Although the prosecutor failed to timely disclose the new information which was

---

[5] Because we affirm the trial court's finding that the prosecutor's actions were the result of a mistake, we need not address Hollingsworth's arguments that the prosecutor's actions were intentional and demonstrated an indifference to a significant risk of mistrial or reversal.  *See Pool*, 139 Ariz. at 108-09, 677 P.2d at 271-72.

material, the court focused on the unduly suggestive photograph because it was the linchpin that ultimately led to the declaration of the mistrial. As a result, it was not the lack of disclosure that led to the mistrial (even though disclosure could have resulted in the court's earlier intervention to resolve the issue), but showing the victim the unduly suggestive photograph. Given that the court was aware that the State had not disclosed the information at any time before trial, but focused on the unduly suggestive photograph, we do not find that the failure to integrate the disclosure violation requires us to grant the double jeopardy motion.

## II.    Prosecutorial Vindictiveness

¶32        Hollingsworth argues that the trial court erred by denying his motion to dismiss for prosecutorial vindictiveness. We disagree.

¶33        Prosecutorial vindictiveness occurs when a prosecutor makes a decision to punish or increase the punishment because the defendant exercised a protected legal right. *State v. Mieg*, 225 Ariz. 445, 447, ¶ 10, 239 P.3d 1258, 1260 (App. 2010). We must distinguish "between the acceptable vindictive desire to punish [a defendant] for any criminal acts, and vindictiveness which violates due process." *Id.* at 448, ¶ 12, 239 P.3d at 1261 (quoting *United States v. Doran*, 882 F.2d 1511, 1518 (10th Cir. 1989) (internal quotation marks omitted). As a result, we review a trial court's ruling on a motion to dismiss for vindictive prosecution for an abuse of discretion. *Mieg*, 225 Ariz. at 447, ¶ 9, 239 P.3d at 1260; *State v. Brun*, 190 Ariz. 505, 506, 950 P.2d 164, 165 (App. 1997). A court abuses its discretion when "the reasons given by the court for its action are clearly untenable, legally incorrect, or amount to a denial of justice." *State v. Chapple,* 135 Ariz. 281, 297 n.18, 660 P.2d 1208, 1224 n.18 (1983) (citation omitted).

¶34        Hollingsworth argued that the State acted vindictively after the mistrial was granted by filing a notice alleging aggravating circumstances that the State had not alleged in the first trial. Hollingsworth, however, conceded that the State alleged historical prior felonies, but argued that it was not fair to allow the State to allege the prior convictions as aggravating circumstances in the second trial because it was possible that the State would not have proved the prior felonies. After finding that Hollingsworth had not met his burden, the court then denied the motion to dismiss.

¶35        Hollingsworth argues that the trial court did not apply the proper legal standard. A trial court, however, is presumed to know and apply the law correctly. *State v. Williams*, 220 Ariz. 331, 334, ¶ 9, 206 P.3d

780, 783 (App. 2008) (noting that "[t]rial judges are presumed to know the law and to apply it in making their decisions") (internal citations and quotation marks omitted). And "[a] trial judge is not required to expressly state the burden of proof applied; [instead, this Court] assume[s] the judge applied the proper burden of proof." *In re William L.*, 211 Ariz. 236, 238, ¶ 7, 119 P.3d 1039, 1041 (App. 2005).

¶36 In *United States v. Goodwin*, the Supreme Court stated that a defendant may prove prosecutorial vindictiveness either by: (1) showing actual vindictiveness "through objective evidence that a prosecutor acted in order to punish him for standing on his legal rights," or (2) showing that the circumstances provide for a "presumption of vindictiveness." 457 U.S. 368, 380-81 n.12 (1982); *see Brun*, 190 Ariz. at 507-08, 950 P.2d at 166-67 (Arizona follows the Supreme Court standard on presumed prosecutorial vindictiveness). Here, before the first trial, the State alleged Hollingsworth had prior felony convictions, and the court held an Arizona Rule of Evidence 609 hearing. And before that trial, the court told Hollingsworth that, if he was convicted, he could be sentenced to prison from a range of 10.5 to 35 years.

¶37 After the court declared a mistrial and before the start of the second trial, the State filed a notice of aggravating circumstances, which included the prior felony convictions and two other circumstances. *See* A.R.S. § 13-701(D). The notice did not, however, expose Hollingsworth to more punishment in the second trial than if there had not been a mistrial.

¶38 The jury subsequently found Hollingsworth guilty, and, at the presentencing hearing, the State proved that he had two prior historical felony convictions. As a result, the court was free to consider those felony convictions, as well as any statutory aggravating and mitigating factors, A.R.S. § 13-701(D) – (E), including the letters Hollingsworth presented in mitigation. The court, as a result, considered the prior felonies and found that the presumptive term was 15.75 years and a maximum aggravated term of 35 years,[6] and was free to consider any relevant aggravating factors that could be found by the fact of the conviction. *See Martinez*, 210 Ariz. at 583, ¶ 16, 115 P.3d at 623 (the sentencing court can exercise discretion within a sentencing range established by the fact of a prior conviction, facts found by a jury, or facts admitted by a defendant, and as a result, after a

---

[6] In addition to the prior felonies, because one of Hollingsworth's prior felonies was the failure to register as a sex offender, the court considered the need to protect the community as an aggravating circumstance. *See State v. Martinez*, 210 Ariz. 578, 583, ¶ 16, 115 P.3d 618, 623 (2005).

conviction, the court may consider any additional factors in determining what sentence to impose, so long as the sentence falls within the established range). As a result, the sentence imposed was within the court's discretion even if the State had not filed the notice of aggravating circumstances. Consequently, the record does not demonstrate that the trial court erred in denying the motion to dismiss based on prosecutorial vindictiveness. *See State v. Bonfiglio*, 228 Ariz. 349, 354, ¶ 21, 266 P.3d 375, 380 (App. 2011), *affirmed*, 231 Ariz. 371, 295 P.3d 948 (2013) (noting, "[a] trial court may use the same convictions to enhance or increase the sentencing range and to aggravate a defendant's sentence within the enhanced range"); *see also State v. Webb,* 140 Ariz. 321, 323, 681 P.2d 473, 475 (App. 1984) (concluding that there was no vindictive prosecution where "[t]he prosecutor did not charge [the defendant] with a higher crime").

### III.    Prosecutorial Misconduct in the Second Trial

**¶39**        Hollingsworth argues that the prosecutor's misconduct in the second trial warrants reversal. Hollingsworth did not object to any prosecutorial misconduct in the second trial, so we review for fundamental error. *See State v. Dixon*, 226 Ariz. 545, 549, ¶ 7, 250 P.3d 1174, 1178 (2011) (stating that "[b]ecause [there was] no claim of prosecutorial misconduct below, we review for fundamental error."); *see also State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).

**¶40**        "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Hughes,* 193 Ariz. 72, 79, ¶ 26, 969 P.2d 1184, 1191 (1998) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). Because "[m]isconduct alone will not cause a reversal," *State v. Hallman,* 137 Ariz. 31, 37, 668 P.2d 874, 880 (1983), "[t]he focus is on the fairness of the trial, not the culpability of the prosecutor." *State v. Bible,* 175 Ariz. 549, 601, 858 P.2d 1152, 1204 (1993).

**¶41**        Error is fundamental if it goes to the "foundation of [the] case, takes away a right that is essential to [the] defense, and is of such magnitude that [the defendant] could not have received a fair trial." *Henderson,* 210 Ariz. at 568, ¶ 24, 115 P.3d at 608. "To qualify as 'fundamental error' . . . the error must be clear, egregious, and curable only via a new trial." *State v. Gendron,* 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991). For prosecutorial misconduct to qualify as fundamental error, the error must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *State v. Harrod,* 218 Ariz. 268, 278, ¶ 35, 183 P.3d 519, 529 (2008)

(quoting *Hughes,* 193 Ariz. at 79, ¶ 26, 969 P.2d at 1191). In addition, once fundamental error has been established, a defendant must show that the error was prejudicial before we will reverse a verdict. *Henderson,* 210 Ariz. at 568-69, ¶ 26, 115 P.3d at 608-09.

**¶42**     Ordinarily, Arizona does not recognize the cumulative error doctrine because "something that is not prejudicial error in and of itself does not become such error when coupled with something else that is not prejudicial error." *State v. Roscoe,* 184 Ariz. 484, 497, 910 P.2d 635, 648 (1996). Prosecutorial misconduct cases are, however, the exception because "this general rule [of cumulative error] does not apply when the court is evaluating a claim that prosecutorial misconduct deprived defendant of a fair trial." *Hughes,* 193 Ariz. at 78-79, ¶ 25, 969 P.2d at 1190-91. Consequently, if we find more than one instance of prosecutorial misconduct, it may amount to enough to create prejudice to warrant a new trial.

### A.     Opening Statement

**¶43**     Hollingsworth first asserts that the prosecutor's misconduct during his opening statement warrants reversal because the State commented on his right to remain silent. We disagree.

**¶44**     During the opening statement the prosecutor, previewing what the jurors would hear about Hollingsworth's interview with the sheriff deputy, said:

> [Hollingsworth] indicated that the vehicle, the '94 Buick, was his vehicle; that's the vehicle he had been driving in Cordes Lakes. And importantly, when asked when he simply drove by this girl who was walking in the road and she said, "Hey, get out of here," it was the defendant's recollection that his windows were rolled up and he [said h]e could hear her through this rolled-up glass. That's the only contact the defendant indicated, or *would admit to*, to the deputies.

(Emphasis added.)

**¶45**     The challenged statement — "[t]hat's the only contact the defendant indicated, or would admit to, to the deputies" — was the only reference in the State's opening statement about what the State hoped or intended to present to the jury. In part, it was factual, and the State went

17

on to prove that Hollingsworth voluntarily made the pretrial statement that he was driving, saw the girl walking in the road, and told her to get out of here. Although there was no basis for the part of the statement that "or [he] would admit to," it was not about Hollingsworth's future decision about testifying at trial, nor about his invocation of his constitutional rights, nor does it imply that the jury could find Hollingsworth guilty because he would not admit to further facts to the deputies. Even though part of the statement was an inappropriate comment on the fact that Hollingsworth did not confess, it was tempered by the fact that the jury was instructed just before opening statements that "[s]tatements or arguments made by the lawyers in th[is] case are not evidence." The same instruction was included in the final instructions given to the jury, and we presume, in the absence of evidence to the contrary, that juries follow their instructions. *See State v. Dunlap*, 187 Ariz. 441, 461, 930 P.2d 518, 538 (App. 1996).

¶46        Moreover, Hollingsworth cites to cases where a prosecutor made the statement during closing argument, which reflected that the defendant did not testify; a clear violation of law. *See* A.R.S. § 13-117(B); *State v. Shing*, 109 Ariz. 361, 364, 509 P.2d 698, 701 (1973). That standard does not apply here because the statement was made in the opening statement and subject to future proof, and we will not assume that the jury interpreted the prosecutor's statement in a manner most damaging to the defense. *See Houston v. Roe*, 177 F.3d 901, 909 (9th Cir. 1999) (recognizing that a reviewing "'court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.'") (quoting *Donnelly*, 416 U.S. at 647). Additionally, the court in both its preliminary instructions and final instructions not only instructed the jury that the State was required to prove each element of each offense beyond a reasonable doubt, but also told the jury that a defendant has a constitutional right not to testify at trial and the exercise of that right cannot be considered by the jury in determining whether a defendant is guilty or not guilty. As a result, we do not find that the prosecutor's statement during the opening statement is prosecutorial misconduct, nor do we find fundamental or any resulting prejudice. *See State v. Anderson*, 210 Ariz. 327, 341-42, ¶¶ 50-52, 111 P.3d 369, 383-84 (2005) (finding no error in prosecutor's statement because the court had admonished the jury that the lawyers' statements were not evidence).

## B.    Questions to Witnesses

¶47        Hollingsworth next argues that the prosecutor's misconduct during witness examinations warrants reversal. Specifically,

Hollingsworth contends that the prosecutor inflamed the jury when he elicited testimony from the victim that she "doesn't go walking by herself anymore." After cross-examination of the victim, which implied the victim was fabricating her testimony, the victim's mother testified that the victim is more cautious and does not go walking by herself anymore. The testimony was proper because it substantiated the victim's testimony and was designed to undermine the inference that she was fabricating her testimony. *See State v. Thomas*, 130 Ariz. 432, 434, 636 P.2d 1214, 1216 (1981) (observing that "any evidence which substantiates the credibility of a prosecuting witness on the question of guilt is relevant and material") (citation omitted). Accordingly, we find no misconduct by the prosecutor's questions to the victim or her mother, which was a response to undermine the inference that the victim fabricated her testimony.

¶48 Hollingsworth also maintains that the prosecutor "back-doored" hearsay testimony by asking each responding deputy what was the nature of the call. The record shows that the prosecutor was eliciting the testimony to set the foundation for the deputies' testimony, and the testimony was not hearsay because it was not admitted to prove the truth of the matter asserted. *See State v. Tucker*, 215 Ariz. 298, 315, ¶ 61, 160 P.3d 177, 194 (2007) (noting "testimony that is not admitted to prove its truth is not hearsay"). Thus, the prosecutor's questions did not amount to misconduct.

¶49 Next, Hollingsworth asserts that the prosecutor engaged in bolstering by asking the victim if she was "mad at her mother, was seeking attention, or had any reason to lie." The question and resulting testimony was not about bolstering, but concerned the victim's lack of a motive to testify falsely. The question, as a result, is not improper bolstering but an attempt to mitigate the anticipated cross-examination, which would explore the victim's motivation to falsify the occurrence. *See State v. Vazquez*, 830 A.2d 261, 271 n.10 (Conn. App. 2003) (stating that because a witness's motivation to lie may be explored on cross-examination, it may also be discussed during direct examination).

¶50 Hollingsworth also asserts that the prosecutor had the victim characterize the evidence by asking her on redirect examination if certain facts brought out during cross-examination "meant she was lying," and if she had been lying, why would she "continue to lie." The record shows that the prosecutor's questions during redirect were a response to Hollingsworth's impeachment during cross-examination. *See, e.g., Jones v. State*, 733 S.E.2d 400, 405 (Ga. App. 2012) (concluding that prosecutor could ask the victim "if she was telling the truth" on redirect after "defense

19

counsel attempted to impeach the victim's credibility"). As a result, the question was not impermissible, and we find no misconduct.

¶51            Finally, Hollingsworth asserts that the prosecutor misled the jurors about the lack of a photo line-up. Hollingsworth complains that the prosecutor asked the detective why a lineup was not conducted, and the detective said, "[The victim] did say she did not see his face clear enough that she would be able to identify him in any photo." The question and answer were designed to explain why the police did not conduct a photographic line-up to have the victim identify her assailant. As a result, the prosecutor did not mislead the jury about the lack of a photo line-up. Consequently, we do not find any fundamental error or any resulting prejudice.

### C.       Closing Argument

¶52            Hollingsworth next argues that the prosecutor's closing argument warrants reversal. We disagree.

¶53            Prosecutors generally are afforded wide latitude during closing argument. *State v. Comer*, 165 Ariz. 413, 426, 799 P.2d 333, 346 (1990). They, however, may not "make arguments which appeal to the passions and fears of the jury." *Id.* A prosecutor's remarks are improper if they call the jurors' attention to matters that they would not be justified in considering in determining their verdict and it is probable that the jurors were influenced by the remarks. *State v. Jones*, 197 Ariz. 290, 304, ¶ 32, 4 P.3d 345, 359 (2000); *State v. Hansen*, 156 Ariz. 291, 296-97, 751 P.2d 951, 956-57 (1988). Thus, "[w]e will not reverse a conviction because of a prosecutor's improper comments during closing argument unless there is a reasonable likelihood that the misconduct could have affected the jury's verdict." *State v. Edmisten*, 220 Ariz. 517, 524, ¶ 23, 207 P.3d 770, 777 (App. 2009) (internal citations and quotation marks omitted).

¶54            Hollingsworth argues that the prosecutor improperly compared his statements with the victim's testimony. Here, the prosecutor referred to the victim's testimony as "sworn," "under oath," and "subject to cross-examination." Hollingsworth, however, has cited no authority, and we have found none, for the proposition that a prosecutor cannot compare and contrast a defendant's pretrial statements with trial testimony. *See, e.g., State v. Hebert*, 697 So.2d 1040, 1045–46 (La. App. 1997) (where the "prosecutor was attempting to compare and contrast the state's evidence given by witnesses under oath with the unsworn statement of

defendant," the comments were "not intended to draw the jury's attention to defendant's failure to testify"). Consequently, we find no error.

¶55 Hollingsworth also contends that the prosecutor improperly told the jurors that the victim's statements were "uncontroverted" and "unchallenged." The record shows that the prosecutor's statements were focusing on the victim's statement that she did not know Hollingsworth. And there is no evidence in the record controverting or challenging the victim's statement. *See State v. Kerekes*, 138 Ariz. 235, 239, 673 P.2d 979, 983 (App. 1983) ("Not every reference to the fact that testimony has been uncontroverted necessarily focuses on the appellant's exercise of his right not to testify."). Again, we find no error.

¶56 Next, Hollingsworth argues that the prosecutor improperly commented on the defense's closing argument. The record demonstrates that the prosecutor commented on the defense's closing, but the prosecutor was criticizing Hollingsworth's theory that the offense did not happen or, if it did, he did not commit the offense. The prosecutor, as a result, did not improperly comment on Hollingsworth's closing argument. *See United States v. Sayetsitty*, 107 F.3d 1405, 1409 (9th Cir. 1997) ("Criticism of defense theories and tactics is a proper subject of closing argument."); *see also State v. Amaya-Ruiz*, 166 Ariz. 152, 171, 800 P.2d 1260, 1279 (1990) (concluding that prosecutor did not engage in misconduct when he characterized the defendant's defense as a "smoke screen" and called the defense counsel's argument "outrageous").

¶57 Hollingsworth also asserts that the prosecutor engaged in vouching when he said, "I believe the evidence shows that this [was] a kidnapping." "Vouching occurs when a prosecutor places the prestige of the government behind a witness or when the prosecutor suggests that information not presented to the jury supports a witness's testimony." *State v. Rosas-Hernandez*, 202 Ariz. 212, 219, ¶ 26, 42 P.3d 1177, 1184 (App. 2002). Here, the prosecutor was summing up his argument and was asking the jury to find Hollingsworth guilty. When read in context, the prosecutor's statement is not vouching as it has been defined in Arizona. *See id.*; *State v. Lee*, 185 Ariz. 549, 554, 917 P.2d 692, 697 (1996) (holding that when read in context the prosecutor's comments, "[n]ow she's been, I think, honest when she says she wasn't even aware that [other witnesses] had seen her" and "I think [another witness] was an honest man, certainly an honest man, but I think he made an honest mistake" were not vouching).

¶58        Finally, Hollingsworth argues that the prosecutor committed misconduct by calling him a "predator."  The use of the term was a single isolated statement the prosecutor made after discussing the evidence that supported the assertion that Hollingsworth followed the victim and planned to sexually assault her.  Although the use of the term "predator" was excessive and emotional language, *see Jones*, 197 Ariz. at 305, ¶¶ 36–37, 4 P.3d at 360 (noting that "excessive and emotional language is the bread and butter weapon of counsel's forensic arsenal") (internal citations and quotation marks omitted), the isolated use of the term was not misconduct warranting reversal of the conviction.  Consequently, no prejudicial fundamental error was committed during the closing arguments that so permeated the trial that it requires us to reverse the conviction.

## CONCLUSION

¶59        Hollingsworth's conviction and sentence for kidnapping is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama