IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**KEVIN DUNBAR,**
*Appellant.*

No. CR-23-0029-PR
Filed June 18, 2024

Appeal from the Superior Court in Pima County
The Honorable Catherine M. Woods, Judge
No. CR20152260-001
**REMANDED**

Memorandum Decision of the Court of Appeals,
Division Two
No. 2 CA-CR 21-0069
**VACATED IN PART**

COUNSEL:

Kristin K. Mayes, Arizona Attorney General, Alexander W. Samuels, Principal Deputy Solicitor General, Alice M. Jones (argued), Deputy Solicitor General, Section Chief of Criminal Appeals, Phoenix, Attorneys for State of Arizona

Robb Holmes (argued), Assistant Legal Defender, Pima County Legal Defender's Office, Tucson, Attorneys for Kevin Dunbar

Laila Ikram (argued), Mikel Steinfeld, Attorneys for Amicus Curiae Arizona Attorneys for Criminal Justice

---

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, LOPEZ, and KING joined. JUSTICE MONTGOMERY dissenting in part and concurring in part.

---

JUSTICE BEENE, Opinion of the Court:

**¶1**        Appellate courts review objected-to error that occurs during criminal trial proceedings under either structural error or harmless error review. When a court finds structural error, the verdict or sentence of the defendant—whichever is challenged—is automatically reversed. *See Greer v. United States*, 593 U.S. 503, 513 (2021). But if the error is categorized as harmless error, the state must show beyond a reasonable doubt that the error did not contribute to the verdict or sentence. *See Weaver v. Massachusetts*, 582 U.S. 286, 294 (2017).

**¶2**        Kevin Dunbar—who was convicted of multiple felonies but whose sentence was overturned on appeal—asked to represent himself in the final stages of his resentencing. The trial court denied Dunbar's request and subsequently sentenced him to prison.

**¶3**        Dunbar appealed. The court of appeals concluded that the trial court's denial of Dunbar's request to represent himself constituted structural error and thus remanded the case to the trial court to reconsider his request. In this case, we decide whether the denial of the right to self-representation at sentencing is amenable to harmless error—rather than structural error—review.

**¶4**        For the reasons announced in this Opinion, we hold that erroneous denials of the right to self-representation at sentencing constitute structural error. However, we also recognize that not all denials of self-representation requests are erroneous, and we therefore clarify the analysis a trial court must employ in determining whether it should grant a defendant's untimely self-representation request.

**BACKGROUND**

**¶5** Dunbar was convicted of attempted first degree murder, aggravated assault with a deadly weapon, kidnapping, and possession of a deadly weapon by a prohibited possessor. *State v. Dunbar* (*Dunbar I*), 249 Ariz. 37, 42 ¶ 1 (App. 2020). Dunbar appealed his convictions and sentences. *Id.* ¶ 4. He claimed, among other things, that he was denied the right to self-representation at trial. *Id.* at 44 ¶ 10. The court of appeals upheld his convictions but remanded for resentencing on different grounds. *Id.* at 54 ¶ 55. In rejecting his self-representation argument, the court found Dunbar "forfeited his right to self-representation through his vacillating positions," and that Dunbar had eventually signed a motion waiving his right to self-representation. *Id.* at 46 ¶ 17.

**¶6** At his resentencing, Dunbar was represented by counsel. After hearing from the victim, the State, and Dunbar's counsel, the trial court asked if Dunbar wished to speak. Dunbar requested a continuance because he had not had an opportunity to consult with his attorney before the hearing. The court granted Dunbar's request and informed him that the continued hearing would only involve his comments regarding sentencing, as the other parties had already been heard.

**¶7** Before the continued hearing, Dunbar filed a request to proceed pro se. At the hearing, the court denied Dunbar's request to represent himself. Applying the law of the case doctrine, the court reasoned that Dunbar had forfeited his right to self-representation based on "his vacillating position and his signed waiver," as established in *Dunbar I*. However, the court acknowledged that "it had read his two pro se memoranda on sentencing and would take those into account."

**¶8** Dunbar objected to the court's ruling. He informed the court that he still had not spoken to counsel and that he disagreed with his counsel's position regarding sentencing. The court allowed a recess so Dunbar could speak with his attorney. After reconvening the hearing, and after hearing from Dunbar, the court pronounced the sentence.

**¶9** Dunbar appealed, arguing that his sentence should be vacated because he was denied the right to self-representation at resentencing. *See State v. Dunbar* (*Dunbar II*), No. 2 CA-CR 2021-0069, 2023 WL 126419, at *1

¶ 1 (Ariz. App. Jan. 6, 2023) (mem. decision). In a split decision, the court of appeals concluded that the trial court's denial of Dunbar's right to self-representation at sentencing constituted structural error. *Id.* at *4 ¶ 16. The dissenting judge asserted that the trial court's denial of self-representation was not structural error and should thus be evaluated for harmless error. *Id.* at *6 ¶ 26 (Brearcliffe, J., concurring in part and dissenting in part).

¶10 The court of appeals also concluded that the trial court failed to properly analyze Dunbar's request to represent himself. *Id.* at *4 ¶ 20. Though the court found that Dunbar's request was untimely, it remanded to the trial court to determine whether Dunbar's request should have been granted. *Id.* The court of appeals instructed the trial court to make this determination by considering the factors enunciated in *State v. De Nistor*, 143 Ariz. 407 (1985). *Dunbar II*, 2023 WL 126419, at *4 ¶ 20. If, after conducting this analysis, the trial court determined that Dunbar's requests should have been granted, the court was to vacate his sentences and schedule a resentencing. *Id.*

¶11 The State appealed and we granted review to answer a recurring question of statewide importance in criminal cases: "Is the denial of the right to self-representation at sentencing amenable to harmless error, rather than structural error, review?" We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶12 This Court reviews questions of law de novo. *State v. Smith*, 215 Ariz. 221, 227 ¶ 14 (2007); *State v. Glassel*, 211 Ariz. 33, 50 ¶ 59 (2005) (applying the Sixth Amendment).[1]

---

[1] We limit our analysis to applying the United States Constitution, rather than article 2, section 24 of the Arizona Constitution, because only amici—neither Dunbar nor the State—raised it. *See Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 479 ¶ 37 (2023) (declining to address an issue raised by amici because it "would expand the issues on appeal and address an argument not made by either party").

**I.**

**¶13** The right to counsel guaranteed under the Sixth Amendment of the United States Constitution includes an accused's right to self-representation. *Faretta v. California*, 422 U.S. 806, 819 (1975); *see also* U.S. Const. amends. VI, XIV. This right also extends to representing oneself at sentencing. *See Lopez v. Thompson*, 202 F.3d 1110, 1117 (9th Cir. 2000) ("There is also no question that [the defendant] had a correlative right to waive assistance of counsel and represent himself [at his sentencing].").

**¶14** As previously noted, when it comes to constitutional errors that occur during a criminal proceeding, courts generally analyze the error to determine whether it was harmless. *See Arizona v. Fulminante*, 499 U.S. 279, 306 (1991). Under the harmless error standard, if the state can show beyond a reasonable doubt that the error did not contribute to the verdict, the defendant's conviction or sentence will not be reversed. *See Weaver*, 582 U.S. at 294. In contrast, a structural error entitles the defendant to "automatic reversal without any inquiry into prejudice." *Id.* at 290. Structural error that occurs at sentencing requires the reviewing court to remand for resentencing. *See, e.g.*, *United States v. Virgil*, 444 F.3d 447, 456–57 (5th Cir. 2006).

**¶15** "The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial." *Weaver*, 582 U.S. at 294–95. Structural errors require reversal because they "infect[] 'the entire trial process' from beginning to end." *State v. Ring*, 204 Ariz. 534, 553 ¶ 46 (2003) (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)). However, structural errors only apply in "a very limited class of cases." *Johnson v. United States*, 520 U.S. 461, 468 (1997); *accord Ring*, 204 Ariz. at 552 ¶ 46 ("The Supreme Court has defined relatively few instances in which we should regard error as structural.").

**¶16** Against this backdrop, structural error is readily identifiable because it is not amenable to a harmless error analysis. *See Weaver*, 582 U.S. at 295. Indeed, the United States Supreme Court has highlighted three rationales for concluding an error is structural: (1) "the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest"; (2) "the effects of the error are simply too hard

to measure"; and (3) "the error always results in fundamental unfairness." *Id.* at 295–96. However, "[t]hese categories are not rigid. In a particular case, more than one of these rationales may be part of the explanation for why an error is deemed to be structural." *Id.* at 296.

¶17    Supreme Court caselaw establishes that the right to self-representation in the guilt phase falls into the first rationale, *see id.* at 295, as well as the second rationale, *see McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis."). As we now determine, both rationales that underpin the self-representation right in the guilt phase also lend themselves to the sentencing phase. We explore both rationales in turn.

**A.**

¶18    First, the right to self-representation protects the "dignity and autonomy of the accused" rather than protecting the accused from the possibility of erroneous conviction. *See McKaskle*, 465 U.S. at 176–77. The self-representation right is also unique because a defendant's successful assertion of the right "usually increases the likelihood of a trial outcome unfavorable to the defendant" because they ostensibly lose the expertise of their counsel. *See id.* at 177 n.8; *see also Faretta*, 422 U.S. at 835 ("When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel."); *United States v. Mendez-Sanchez*, 563 F.3d 935, 945 (9th Cir. 2009) ("[D]espite the potential ill-consequence of self-representation, we permit it because of our society's respect for individual dignity . . . .").

¶19    At its core, the right to self-representation is grounded in the "fundamental legal principle that a defendant must be allowed to make his own choices about the proper way to protect his own liberty." *Weaver*, 582 U.S. at 295. Because defendants, rather than their counsel, bear the risk and *consequences* of conviction, every defendant must be free to personally decide whether having counsel is advantageous. *See Faretta*, 422 U.S. at 819–20 ("The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails."). And, though sentencing occurs after guilt is determined, a convicted person's

liberty—especially the *extent* of their liberty—is still at stake. *See State v. Ritch*, 160 Ariz. 495, 498 (App. 1989) ("[A] person's liberty is at stake in a sentencing procedure . . . ."); *see also Mempa v. Rhay*, 389 U.S. 128, 135 (1967) (explaining the importance of counsel's presence at sentencing because of the choices over presenting one's case at that stage). Accordingly, when it comes to a defendant's right of self-representation in light of the dignitary harm it protects, there is no meaningful distinction between the guilt phase and the sentencing phase of the trial.

**B.**

**¶20** The erroneous denial of the right to self-representation is also impossible to measure in terms of prejudice. As the court of appeals majority pointed out, "a defendant's right to self-representation is not contingent upon a showing that he or she would have achieved a better result than counsel." *Dunbar II*, 2023 WL 126419, at *4 ¶ 16 n.1. The right is therefore not grounded in readily measurable harm. *See McKaskle*, 465 U.S. at 177 n.8.

**¶21** Indeed, this second characteristic of the self-representation right is entwined with the first principle we have already discussed: that an individual "be allowed to make his own choices about the proper way to protect his own liberty." *See Weaver*, 582 U.S. at 295. Such a right cannot be protected in any meaningful way by harmless error analysis because an injury is not manifested in a conviction or a particular sentence, but instead in the wrongful denial of a criminal defendant's control over the case. *See id.*

**¶22** Overall, the erroneous denial of the right to self-representation renders sentencing an unreliable vehicle for determining an appropriate sentence because defendants lose the ability to provide their *own* defense—a defense that may differ from what their counsel offers. To be sure, the Supreme Court has consistently stated that structural errors are limited only to errors that infect the *entire* framework of the trial process. *See id.* at 294–95; *Greer*, 593 U.S. at 513–14; *Neder*, 527 U.S. at 8. And sentencing occurs at the end of the trial process, which raises the question of how denial of the right to self-representation only at sentencing—or, as here, the very end of the sentencing procedure—infects the entire process. But the autonomy and dignitary harm from the denial

of self-representation can occur at any time during the trial process, and the intangible nature of that harm means it has the potential to infect the entire proceeding. Accordingly, we hold that a court's denial of a defendant's request for self-representation at sentencing is amenable to structural error review rather than harmless error review.

**¶23** In light of our holding, we now clarify the previously articulated standards for determining whether a criminal defendant's untimely request for self-representation should be granted. *See De Nistor*, 143 Ariz. at 412–13.

## II.

**¶24** Although the denial of the right to self-representation at sentencing is reviewed for structural error, Arizona jurisprudence is clear that not every request to self-represent should be granted. *State v. Cornell*, 179 Ariz. 314, 326 (1994) ("A defendant's right to discharge counsel and proceed in propria persona is a qualified right once trial has begun."). The right to self-representation does not "exist in a vacuum" because the right is balanced against the right to a "fair trial conducted in a judicious, orderly fashion." *De Nistor*, 143 Ariz. at 412 (quoting *United States v. Dujanovic*, 486 F.2d 182, 186 (9th Cir. 1973)). Thus, the request must be timely and subject to a finding that the waiver of counsel is made voluntarily and knowingly. *Id.*

**¶25** Such a request "is timely if it is made before the jury is empaneled." *Id.*; *see, e.g.*, *State v. Weaver*, 244 Ariz. 101, 105 ¶ 10 (App. 2018) ("[A]lthough [the defendant] made his requests at the last possible moment before jury selection began, his requests were timely."). If the request is deemed untimely, a court should consider the factors outlined in *De Nistor*: "[1] the reasons for the defendant's request, [2] the quality of counsel, [3] the defendant's proclivity to substitute counsel, and [4] the disruption and delay expected in the proceedings if the request were to be granted." *De Nistor*, 143 Ariz. at 413 (quoting *People v. Barnes*, 636 P.2d 1323, 1325 (Colo. App. 1981)). A court should also reject a defendant's request if the motion for self-representation "was made for the purpose of delay." *State v. Thompson*, 190 Ariz. 555, 557 (App. 1997). Moreover, a "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46.

**¶26** The *De Nistor* analysis "gives the defendant the opportunity to assert the right of self-representation but not at the expense of the orderly administration of the judicial process." 143 Ariz. at 413. This is because the defendant's right must be considered along with victims' constitutional rights and "the trial court's prerogative to control its own docket." *See State v. Lamar*, 205 Ariz. 431, 436 ¶ 27 (2003); Ariz. Const. art. 2, § 2.1(10).

**¶27** Considering the consequences of structural error, we expand the analysis in *De Nistor* regarding when the denial of self-representation at sentencing is appropriate. Specifically, a court must also consider whether denying the defendant's request would prevent the defendant from being "allowed to make his own choices about the proper way to protect his own liberty." *Weaver*, 582 U.S. at 295. For example, a trial court should favorably consider a defendant's self-representation request if the defendant still has the opportunity to marshal sentence-influencing evidence or make legal arguments affecting sentencing. Conversely, a trial court should not grant a defendant's request if the remaining proceedings are ministerial in nature—such that the defendant's personal control does not have any bearing on the protection of his or her own liberty.

**¶28** A trial court's inquiry as to what remains in a sentencing proceeding is consistent with *De Nistor*'s balance between the protection of the self-representation right and the "orderly administration of the judicial process." 143 Ariz. at 413. Moreover, introducing this consideration is consistent with Supreme Court precedent. The Court in *McKaskle* demonstrated that not every imposition on a defendant's right to self-representation is serious enough to constitute error. *See* 465 U.S. at 187–88. In *McKaskle*, the Supreme Court concluded that the participation of advisory counsel at trial did not violate a defendant's right to conduct his own defense under the Sixth Amendment. *Id.* The Supreme Court reached this conclusion because it determined that advisory counsel's intrusions were not substantial enough to undermine the primary focus of the *Farretta* right— "whether the defendant had a fair chance to present his case in his own way." *Id.* at 177.

**¶29** Our dissenting colleague reads *McKaskle* as an endorsement of a quasi-harmless error review for self-representation errors. *Infra* ¶¶ 33–34. But this reading conflates the two distinct questions that

9

comprise every error analysis: (1) did an error occur and, if so, (2) how is this type of error addressed? *See, e.g.*, *State v. Escalante*, 245 Ariz. 135, 142–46 ¶¶ 22–42 (2018). *McKaskle* answered these two questions by concluding that (1) no error had occurred when the defendant conducted his case with standby counsel, but, *if the defendant's denial of self-representation had been erroneous*, (2) the denial would have been addressed using the structural error standard. 465 U.S. at 177 n.8, 188.

**¶30** Consistent with *McKaskle*, we remand to the trial court for a determination as to whether there was error. The trial court must determine, alongside the other *De Nistor* factors, whether preventing Dunbar from representing himself at the final stage of sentencing would have been substantial enough to interfere with his *Faretta* right. The gravamen of the trial court's inquiry should focus on whether denying Dunbar's motion for self-representation prevented him from making his own choices about how to protect his own liberty. *See Weaver*, 582 U.S. at 295; Part II ¶ 27; *cf. McKaskle*, 465 U.S. at 188. Denying a defendant the right to self-representation when potentially sentence-influencing evidence or arguments can still be presented is more likely to infect the entire trial framework. Such a denial may be serious enough to adversely affect the defendant's autonomy over the presentation of the case and would therefore amount to a *Faretta* violation. Conversely, if the remaining parts of the trial process are ministerial in nature insofar that they require no choice over how to present one's case, then a denial of the right to self-representation would not prevent a defendant from exercising his or her right to conduct his or her own case.

## CONCLUSION

**¶31** We vacate paragraphs 12 through 20 of the court of appeals' memorandum decision and remand this case to the trial court for reconsideration of Dunbar's motion to proceed pro se. On remand, the trial court shall consider the *De Nistor* factors, including whether denying Dunbar's request would substantially undermine his right to present his case at sentencing. If the trial court determines Dunbar's motion should have been granted, structural error has occurred, and Dunbar is entitled to resentencing. If the trial court again determines that Dunbar's motion should not have been granted, Dunbar's sentences stand.

MONTGOMERY, J., dissenting in part, concurring in part:

**¶32**          I respectfully dissent from the majority analysis and disposition regarding structural error for two reasons: 1) the United States Supreme Court has yet to extend a structural error analysis regarding the right to self-representation to a sentencing, let alone a resentencing, proceeding; and, 2) if the facts and circumstances of this case are going to be considered within the Supreme Court's structural error jurisprudence, then it is easily resolved by applying the guidance found in *McKaskle v. Wiggins*, 465 U.S. 168 (1984). However, because I would apply *State v. Lamar*, 210 Ariz. 571 (2005), to resolve this case in the first instance, I concur in the majority's reference to *State v. De Nistor*, 143 Ariz. 407 (1985), for determining whether Dunbar's right to self-representation was violated.

## I. The Majority Needlessly Extends Federal Supreme Court Caselaw

**¶33**          Previously, this Court has declared that we are bound to follow "applicable holdings of United States Supreme Court decisions." *State v. Soto-Fong*, 250 Ariz. 1, 9 ¶ 32 (2020); *see also State v. Anderson*, 547 P.3d 345, 354 ¶ 39 (Ariz. 2024) (Beene, J., dissenting) ("[W]e are bound by the Supreme Court's interpretation of the Sixth Amendment . . . ."). "Nor may we anticipate or assume that the Supreme Court will overturn or alter its established precedent." *State v. Bush*, 244 Ariz. 575, 598 ¶ 103 (2018); *see also Hohn v. United States*, 524 U.S. 236, 252–53 (1998) (stating that the Court's "decisions remain binding precedent" until the Court "see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality"); *Soto-Fong*, 250 Ariz. at 8–9 ¶ 31 (declining to expand Eighth Amendment analysis beyond that of the Supreme Court in juvenile criminal sentencing and observing that Supreme Court had yet to "squarely address[] whether consecutive sentences should be considered in a proportionality review of an adult offender's sentence"). Thus, unless and until the federal Supreme Court addresses how structural error review under these circumstances applies in the sentencing context, especially in light of the problems set forth next, we should not do so.

**¶34**          In the course of applying *McKaskle* and combining it with *Weaver v. Massachusetts*, 582 U.S. 286 (2017), to render the denial of the right to self-representation in the sentencing phase subject to structural error

review, the majority runs into several conflicts inherent in the Supreme Court's treatment of *Faretta* rights and error review. Importantly, the Supreme Court relied on the trial record in *McKaskle* to conclude that the defendant's *Faretta* rights were vindicated. *McKaskle*, 465 U.S. at 181. Yet, reviewing the record is at the heart of harmless error review. *See Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986) (reaffirming "the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt"); *United States v. Hasting*, 461 U.S. 499, 510 (1983) (discussing authority to review the record to determine whether an error was harmless); *see also Lamar*, 210 Ariz. at 573 ¶ 1 (reviewing the record to determine whether an error was harmless or not). And, at the same time, the Supreme Court stated that the denial of *Faretta* rights in the course of a trial cannot be harmless. *McKaskle*, 465 U.S. at 177 n.8. Compounding the conflict is that *Weaver*'s structural error rationale presumes structural error "def[ies] analysis by harmless error standards." *Weaver*, 582 U.S. at 295 (alteration in original) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)).

**¶35** How can an appellate court review the record to conclude that *Faretta* rights, though violated, were nonetheless vindicated if the violation constitutes structural error? The Supreme Court has yet to even try and clarify this conundrum. Notably, *Weaver* merely quotes *McKaskle* in observing that a defendant's exercise of the right to present his own defense "usually increases the likelihood of a trial outcome unfavorable to the defendant." *Id.* at 295 (quoting *McKaskle*, 465 U.S. at 177 n.8). *Weaver* did not even address the ability to vindicate *Faretta* rights nor try to harmonize its own holding with that of *McKaskle* on that point.

**¶36** Regardless, the conflicts manifest in the Supreme Court's structural error jurisprudence need to be resolved before it is extended by the majority to a phase of criminal proceedings the Supreme Court's jurisprudence has yet to encompass. Instead, I would apply the approach first set out in *State v. Lamar*, 205 Ariz. 431, 435–38, ¶¶ 22–37 (2003), *supplemented*, 210 Ariz. 571 (2005). Thus, I concur in the majority's discussion of *De Nistor*. And, upon review of the record and applying the factors, I find no denial of Dunbar's right to self-representation.

## II. *McKaskle* Renders Remand Unnecessary

¶37        Assuming that the right to self-representation at a resentencing hearing is amenable to the Supreme Court's structural error jurisprudence, remand is still wholly unnecessary. *McKaskle* provides a ready template to resolve the issue before us without much, if any, effort.

¶38        In *McKaskle*, the Court stated that "[i]n determining whether a defendant's *Faretta* rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way." 465 U.S. at 177. And the core of a defendant's right of self-representation is the "right[] to make his voice heard." *Id.* The Court went on to explain that:

> [A defendant's] *Faretta* rights are adequately vindicated in proceedings outside the presence of the jury if the *pro se* defendant is allowed to address the court freely on his own behalf and if disagreements between counsel and the *pro se* defendant are resolved in the defendant's favor whenever the matter is one that would normally be left to the discretion of counsel.

*Id.* at 179. The majority does not address this language in its discussion of *McKaskle*.

¶39        The Supreme Court found no error occurred because the record on appeal showed that the trial court vindicated the defendant's *Faretta* rights. *Id.* at 181. The Court noted that:

> [Defendant] was given ample opportunity to present his own position to the court on every matter discussed. He was given time to think matters over, to explain his problems and concerns informally, and to speak to the judge off the record. Standby counsel participated actively, but for the most part in an orderly manner. The one instance of overbearing conduct by counsel was a direct result of [defendant's] own indecision as to who would question the witness on voir dire.

13

[Defendant] was given abundant opportunity to argue his contentions to the court.

*Id.*

**¶40** Here, just as in *McKaskle*, the record reveals that the trial court conducting Dunbar's resentencing hearing vindicated his *Faretta* rights. The court granted Dunbar a continuance to consult with counsel and prepare for the hearing, considered his pro se sentencing memoranda—which agreed with his counsel's determinations as to sentence length—and allowed the defendant to openly address the court. Applying *McKaskle* to the virtually identical facts of this case readily leads to the conclusion that no *Faretta* error occurred, and no remand is necessary.

**¶41** In sum, it is not our place to divine what the high court may do, nor our responsibility to reconcile conflicts in its caselaw. I would therefore vacate ¶¶ 12–18 of the court of appeals memorandum decision and, if relying on federal Supreme Court caselaw, resolve the question before us by applying the guidance from *McKaskle* to find no error occurred and affirm Dunbar's sentence.